JOHNSTON v. HUFF, ANDREWS & MOYLER CO.

(Circuit Court of Appeals, Fourth Circuit. November 15, 1904.)

No. 530.

1. BANKRUPTCY—PREFERENCES—ORDERS—DATE OF PRESENTATION.

One who had a contract with a railroad to furnish board to a track gang entered into an arrangement with a supply firm whereby it was to extend him credit, and he in turn gave it an order on the railroad, directing it to pay to the firm any sums due from the railroad to him. It was agreed between the contractor and the firm that the latter was not to present the order unless the former did not keep up his payments. In pursuance of this agreement the order was not presented for over a year, and then just one day before the contractor, being insolvent, filed a voluntary petition in bankruptcy. *Held,* that the order did not operate as an equitable assignment as of the date when it was given, but was effective as a transfer only when presented to the railroad, and therefore constituted a preference, within section 60 of the bankruptcy act of July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445], declaring a transfer of property by an insolvent, the effect of which is to enable any creditor to obtain a greater percentage of their debts than any other creditors of the same class, a preference.

Appeal from the District Court of the United States for the Western District of Virginia, at Lynchburg, in Bankruptcy.

Roy B. Smith and H. T. Hall, for appellant.

C. B. Moomaw and A. P. Staples (Robert E. Scott, on the brief), for appellee.

Before MORRIS, BRAWLEY, and PURNELL, District Judges.

PURNELL, District Judge. In 1901 John A. White entered into an arrangement with the Norfolk & Western Railway Company by which he became what is known as a "boarding boss." By the arrangement White, as boarding boss, was to furnish board and other supplies to the employés of the Norfolk & Western Railway Company, who were engaged in making repairs to the roadbed of said company. The railway company was to furnish White with the necessary cars for the preparation of food, and to store and ship from place to place the supplies necessary to be kept on hand by White for the use of the men employed by the railway company. The railway company further agreed to deduct from the wages of the men employed by it to whom White furnished board and other supplies the amount due by each of them to White, and to pay the amount so deducted to him.

The wages of the men working for the railway company were payable monthly. The wages earned in one month were due and payable about the 25th of the next month. At the end of each month White made out a statement of how much each employé

of the railway company owed him for board and supplies, and the railway company deducted the amount from the wages due each employé, and paid the amount to White, less 3 per cent. commission on the amount so collected and paid over. It became necessary for White to arrange with some one to extend to him the necessary line of credit to enable him to conduct this business. With that end in view he approached the appellee on the 30th day of January, 1902, and, after giving references, telling his business and requirements, asked that the appellee company furnish him the goods which he would need in his business, and gave as security for his purchases an order, of which the following is a copy:

"Roanoke, Va., January 30th, 1902.

"Treasurer or Paymaster N. & W. Ry. Co., Roanoke, Va.—Dear Sir: You will please pay to Huff, Andrews & Moyler Co., for value received, any and all moneys that may now be due me, or may hereafter become due me as boarding boss on your line of road.

"[Signed]  John A. White. ·

"Witness: Susie Chafin."

This order was held by Huff, Andrews & Moyler Co. from the day of its date, and was not presented or made known to the railway company until the 26th of December, 1902, and during that time White collected from the railway company over $13,000 for his own use. On the 27th of December, 1902, John A. White filed his petition in bankruptcy. When the pay rolls for the month of December, 1902, were made up, some time between the 1st and the 25th of January, it was ascertained that there was coming to White as of the date when the order was presented the sum of $1,292.27 due for earnings in December, 1902, and a small balance from the preceding month. It had been mutually agreed between Huff, Andrews & Moyler Company and White, when he gave them the order, that it should not be presented unless White did not keep up his payments and Huff, Andrews & Moyler Company were, for that reason, obliged to close his credit, and White collected the amounts payable by the railway company to him from January to December without objection on the part of Huff, Andrews & Moyler Company. It was well known to both that the railway company objected to orders being given on it, and that if the order was presented the railway company would remove White from his position of boarding boss.

During the progress of the hearing of White's bankruptcy proceedings before the referee in bankruptcy, Huff, Andrews & Moyler Company, the appellee, filed its petition in the case, in which petition, and the testimony taken before the referee, the foregoing facts appear, and asked that the above-named sum of $1,292.57 be paid to it as having been assigned to it by the above order, which prayer was granted by the referee, and the order entered by him was confirmed by the judge of the District Court. The appeal is from this order.

The plaintiff assigns two grounds of error: (1) Because Huff, Andrews & Moyler Company, under the evidence, is not entitled to a preferential claim to said fund; (2) because the order was not

an equitable assignment of said money due by the said Norfolk & Western Railway Company to the said John A. White, for the reason that the said order was not given for the purpose of being presented to the said Norfolk & Western Railway Company unless the said John A. White should subsequently consent to its being so presented, or the said Huff, Andrews & Moyler Company should wish to terminate the arrangement between it and the said John A. White of extending him credit, all of which is shown by the evidence in this cause, and the court committed error in allowing the said Huff, Andrews & Moyler Company a preferential claim by reason of said order against said bankrupt's estate.

"An agreement to pay out of a particular fund," says Justice Swayne in delivering the opinion in Christmas v. Russell, 14 Wall. 84, 20 L. Ed. 762, "however clear in its terms, is not an equitable assignment; a covenant in the most solemn form has no greater effect. The phraseology employed is not material, provided the intent to transfer is manifested. Such an intent and its execution are indispensable. The assignor must not retain any control over the fund, any authority to collect, or any power of revocation. If he do, it is fatal to the claim of the assignee. The transfer must be of such a character that the fund holder can safely pay, and is compellable to do so, though forbidden by the assignor. Where the transfer is of the character described, the fund holder is bound from the time of notice. A bill of exchange or check is not an assignment pro tanto of the funds of the drawer in the hands of the drawee." This language of the learned judge is supported by ample authority cited in a footnote to the opinion. As to this ruling this case is cited with approval in Dillon v. Barnard, 21 Wall. 440, 22 L. Ed. 673; R. R. Co. v. Meyer, 100 U. S. 457, 25 L. Ed. 593; Laclede Bank v. Schuler, 120 U. S. 516, 7 Sup. Ct. 644, 30 L. Ed. 704. In this last case the court says: "In order to perfect his title the assignee should immediately give notice of the assignment to the debtor, for otherwise a priority of right may be obtained by a subsequent assignee, or the debt may be discharged by a payment to the assignee before such notice." In the case at bar, it was expressly agreed the order should not be presented, and the assignor was permitted to collect funds for nearly a year—the funds now claimed to have been assigned. The order could not take effect or bind the fund until presented to the Norfolk & Western Railway Company, which was done on the 26th day of December, the day preceding the filing of the petition in bankruptcy.

That it was the understanding and intention that the order should not put the funds payable by the railway company out of the control of White until some financial emergency arose is perfectly obvious, not only from the appellee's own testimony, but from the fact that no notice was given to the railway company until it was known to the appellee that the petition in bankruptcy was about to be filed, and by the fact that notwithstanding the order White continued to collect his money from the railway company without let or hindrance from the appellee.

It is a case, we think, in which, in proceedings in bankruptcy, the order should not be held to be effective until it was presented, and should be deemed to be as of that date a transfer of the debtor's property.

By section 60, Bankr. Act July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445], it is provided:

"A person shall be deemed to have given a preference if being insolvent he has within four months * * * made a transfer of any of his property and the effect of the * * * transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other such creditor of the same class."

In Wilson v. Nelson, 183 U. S. 191–198, 22 Sup. Ct. 74–77, 46 L. Ed. 147, it is said: "The act of 1898 makes the result obtained by the creditor, and not the specific intent of the debtor, the essential fact." In the case just cited an irrevocable power of attorney to confess judgment as a security for money loaned was given by the bankrupt to the creditor thirteen years before the application in bankruptcy, but the judgment was actually entered within four months. It was held that the bankrupt act of 1898 intended to prevent a creditor from holding such a warrant of attorney by which he could at any time, upon the insolvency of his debtor, obtain a preference to the exclusion of other creditors. The present case is similar, in that the creditor having the order on the railway company kept it undisclosed until the debtor was insolvent, and then presented it, claiming to take for the payment of its debt a fund which is substantially the bankrupt's only asset. We think the transfer is to be regarded as of the date when the order was made effective by being presented. Matthews v. Hardt, 9 Am. Bankr. R. 373–383, 80 N. Y. Supp. 462; In re Klingaman (D. C.) 101 Fed. 691.

As the creditor delayed the presentation of his assignment or order, and the petition in bankruptcy was filed on the day following, and, as we think, it could only take effect on the day of presentation, it was a transfer on that day for a pre-existing debt; hence a preference within four months. Chapter 3, § 3, Bankrupt Act July 1, 1898, c. 541, 30 Stat. 546 [U. S. Comp. St. 1901, p. 3422]. The creditor has jeopardized and forfeited all rights under such order, and the fund ordered to be paid over to Huff, Andrews & Moyler Company on said order by referee and district judge became vested in the trustee for the benefit of the general creditors. At the time the order became effective it was a preference and void. At this time the creditor knew of the proposed bankruptcy proceedings and of the insolvency of White.

Upon the grounds which have been considered, the decree of the District Court must be reversed, and the fund ordered to be paid to the trustee in bankruptcy for the benefit of the general creditors, and it is so ordered.

Reversed.