### In re DISMAL SWAMP CONTRACTING CO.

(District Court, E. D. Virginia. January 21, 1905.)

1. BANKRUPTCY—LIENS—MORTGAGE EXECUTED PURSUANT TO PRIOR AGREEMENT.

   A parol agreement by a borrower, when the loan was made, to give security upon the property which was to be purchased with the borrowed money, does not render valid a mortgage given pursuant thereto within four months prior to the borrower's bankruptcy, and when he was insolvent, which constitutes a voidable preference under Bankr. Act July 1, 1898, c. 541, § 60b, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445].

2. SAME—MORTGAGE GIVEN IN PART FOR PRESENT CONSIDERATION.

   A mortgage given by an insolvent within four months prior to his bankruptcy, in part to secure an antecedent debt and in part to secure a loan made at the time, is valid to the extent of the latter consideration.

In Bankruptcy. On review of decision of referee.

This proceeding is now before the court upon the petition of the bankrupt's trustee, for a review of the decision of Referee D. Lawrence Groner, heretofore made herein, in regard to the claim of Henry Rhodes, allowed by the said referee as a lien against the bank-

rupt's estate. The referee in his decision states the facts upon which he bases his ruling, as follows:

"In June, 1903, B. E. Holladay, D. T. McKee, and W. J. Strickler, having formed a partnership under the name of the Dismal Swamp Contracting Company, entered into a contract with the Virginia Land & Lumber Company, whereby they undertook to do a large logging business for the latter company, and in addition to run a commissary store for its employees. The conduct of this business required the purchase of considerable equipment, and of the stock of goods in the store, and all of the partners were without funds. Holladay, however, had a rich uncle in Ohio (the claimant here), to whom he applied for the necessary funds to enable the partnership to carry out its contract. He went out to Ohio in June, 1903, at the instance of his associates, and succeeded in borrowing from his uncle the sum of $8,700, and at the latter's request agreed to secure the indebtedness by a mortgage upon the property purchased. On his return from Ohio, bringing with him the borrowed money, he explained to his associates the terms upon which he had obtained it, and they likewise agreed that the mortgage should be given. Nothing, however, was done to consummate this agreement until December, at which time Mr. Rhodes made a trip from Ohio to the works of the partnership in Virginia, and upon his demand the deed of trust which is now the subject of dispute was executed, and properly recorded on the 12th day of December, 1903. The claim of the petitioner under this trust is resisted by the trustee upon three grounds: First, that the trust deed is void under the Virginia decisions, in that it covers a stock of merchandise and reserves to the grantors possession and the power of sale; second, that the deed is voidable under the bankruptcy act, in that it creates a preference; and, third, that it is voidable in that, comprising the entire estate and assets of the bankrupts, it is, in the meaning of the bankrupt law, a conveyance with intent to hinder, delay, and defraud the creditors."

H. H. Rumble, for petitioning creditors.
H. C. Sherritt, for claimant.

WADDILL, District Judge. The referee was of the opinion that neither of the above grounds of objection made to the allowance of this claim were well taken, and therefore overruled the same, and held that the deed constituted a lien, entitling the holder of the debt therein secured to a priority of payment over all debts of the bankrupt contracted from and after the date of its recordation.

The court will first consider the second objection made to this deed, namely, that it was void under the bankruptcy act, in that it created a preference in favor of the beneficiary therein. The deed was confessedly executed and recorded within four months of the bankruptcy; that is to say, the deed was executed on the 11th day of December, 1903, and admitted to record on the day following, and the petition in bankruptcy was filed on the 2d day of April, 1904. The deed secured an indebtedness of $9,725.64; $8,725.64 being an antecedent debt contracted on the 29th of June, 1903, and $1,000 for a present consideration paid at the time of the execution thereof. The referee decided that the trust deed constituted a valid lien, as well for the antecedent debt secured therein as for the present consideration of $1,000 paid at the time of its execution, because the same was executed pursuant to a pre-existing bona fide parol agreement, made by the bankrupt at the time of negotiating the loan in June, 1903, to secure the payment of said amount upon property to be thereafter acquired by the bankrupts, and subsequently covered by the trust deed in question. In this con-

clusion the court cannot concur, as it does not believe that the four-months period prior to the bankruptcy, within which transfers of the bankrupt's property may be avoided, can be enlarged and extended beyond the four-months period, so as to prevent the assailing and invalidating of such conveyances, by means of a parol agreement such as was had in this case. The trust deed in question constitutes a preference under Bankr. Act July 1, 1898, c. 541, §§ 60a, 60b, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445]. Once let it be understood that conveyances made within four months of bankruptcy can be successfully attacked, while those made in pursuance of a pre-existing bona fide agreement will be upheld, and the entire policy of the bankrupt law, in so far as it undertakes to specify the time within which preferences can and cannot be assailed, will be frustrated and destroyed. The door for fraud would be left wide open, and creditors would never know when they were safe in dealing with the estates of their debtors. A condition, alike destructive of the interests of creditors and bankrupts, would be brought about, and a harvest for dishonest debtors afforded. The debtors knowing the circumstances under which they make the preferences, their general creditors to be affected thereby would be entirely at their mercy.

The parol agreement, pursuant to which it is claimed the lien was given in this case, should certainly not avail to place the secured creditor in a better position than he would have been had he actually taken his security at the time he loaned the money and failed to record his trust deed. Under the Virginia statute (Code 1887, § 2465 [Va. Code 1904, p. 1223]), trust deeds, as against creditors, etc., do not constitute a lien until duly recorded. Under the present bankruptcy act (Act July 1, 1898, c. 541, § 60b, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445]), a trust deed actually executed and delivered would be subject to successful attack unless recorded more than four months prior to the bankruptcy. By section 67 of the bankruptcy act (30 Stat. 564 [U. S. Comp. St. 1901, p. 3449]) it is expressly provided that claims which, for want of record or for other reasons, would not have been valid liens as against the claims of creditors of the bankrupt, shall not be liens against his estate. This precise question as to the effect of a parol agreement, such as is set up in this case, was passed upon in the case of In re Ronk (D. C.) 111 Fed. 154. This decision was by Judge Baker, of the District of Indiana, a judge of long experience and recognized ability, who said:

"It cannot be successfully maintained that the verbal agreement created a valid lien as against the claims of the creditors; and, if it did not create a valid lien, then, by the terms of the bankruptcy act, it cannot be enforced as a lien entitled to priority over other claims. It created no lien—nothing but a secret equity, possibly good as between mother and son, but certainly not valid and enforceable to the prejudice of the claims of creditors. The bankruptcy act embraces payments for the purpose of giving preferences, as well as the giving of securities for such purpose; and it would hardly be contended that a preference by way of payment, otherwise invalid, would be valid because the debtor had agreed at the time it was contracted to pay the debt, without defalcation, on a specified day. The doctrine contended for by the mortgagee would necessarily invite and inevitably lead to the defeat of the bankruptcy act. It would be easy, in every case where it was desired to thwart the operation of the law and to give a preference to a relative or a

friend, to make an agreement at the time the money was loaned or the credit given for a mortgage to be executed in the future. If the law can be thus evaded, it would be an open invitation to every person loaning money or giving credit to the bankrupt to enter into such a verbal agreement with him. Such agreements, if held valid, would create secret liens upon the bankrupt's property, and would enable him in every case to effect the very objects which it was the purpose of the bankruptcy act to prevent. Such agreements would undoubtedly be made, in every case where the debtor wished to secure relatives and friends, to the detriment of his other creditors. It would be a standing invitation to perjury, and would defeat the declared policy and purpose of our state legislation, as well as the policy and purpose of the bankruptcy act."

In the case of Pollock v. Jones, 124 Fed. 163, 61 C. C. A. 555, a decision of the Circuit Court of Appeals of this Circuit, and which bears strongly upon the question under consideration, in discussing the question of a parol promise to secure an indebtedness in future, the court, speaking through Judge Simonton (page 166, 124 Fed., page 558, 61 C. C. A.) says:

"We are of the opinion that the bare promise to give security, not expressing in terms the character and subject-matter of the security, could not create either an equitable or legal mortgage."

Under the facts of the present case, it cannot be seriously contended that the specific property upon which the security was to have been given, or, as a matter of fact, was subsequently given, was in terms enumerated or known, or could have been known. It was purchased long after the making of the loan, and at the time of the making of the same was known of in a general way only; that is to say, one of the borrowers, knowing that he and his associates were going to embark in the lumber and sawmill business, promised to secure the money borrowed upon the plant, fixtures, appurtenances, and appliances thereof, and a stock of certain mercantile goods to be used in connection therewith, which they subsequently did, and not only conveyed the property purchased with the money borrowed as aforesaid, but also other property which had not been paid for. The conclusion reached by the court is that the lien in question is invalid, and should be avoided, except as to the $1,000, the present consideration paid at the time of the execution of the same. As to that sum the same is a valid and subsisting lien, and should be upheld. City National Bank v. Bruce, 109 Fed. 71, 48 C. C. A. 236, a decision of the Circuit Court of Appeals of this circuit, is express authority in support of the validity of said deed as to the $1,000.

This case has been argued with exceptional ability on the part of counsel on both sides; and the authorities cited by them, respectively, tending on the one hand to maintain the validity of said deed in its entirety, and on the other its total invalidity, have been carefully examined. They are not in entire harmony on the many questions argued; and, since the case on its merits turns upon the points herein specifically passed upon, no general discussion of them will be made.

A decree may be entered overruling the first and third exceptions to the referee's report, and sustaining the second.