In re SMITH.

(District Court, N. D. New York. February 1, 1910.)

1. BANKRUPTCY (§ 161*)—PREFERENCES—TRANSFER OF PROPERTY WITHIN FOUR MONTHS—EFFECT OF PRIOR AGREEMENT.

Where a mortgage was executed by an insolvent within four months prior to the filing of a petition in bankruptcy against him to secure an existing debt, the fact that it was made pursuant to a prior oral agreement will not prevent the transfer from being held a preference.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 161.*]

2. BANKRUPTCY (§ 58*)—ACTS OF BANKRUPTCY—GIVING PREFERENCE.

Where an insolvent after the return of a verdict against him in an action at law, but before the entry of judgment, sent for a creditor and executed a mortgage to him to secure the debt, the preference thus given to the mortgagee over the judgment creditor must be presumed to have been intentional and constituted an act of bankruptcy under Bankr. Act July 1, 1898, c. 541, § 3a (2), 30 Stat. 546 (U. S. Comp. St. 1901, p. 3422).

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 58.*]

_____

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. BANKRUPTCY (§ 315*)—INVOLUNTARY PROCEEDINGS—PETITIONING CREDITORS.

A judgment creditor who instituted proceedings supplementary to execution under Code Civ. Proc. N. Y. § 2432 et seq., and obtained an injunction restraining the debtor from disposing of his property, on discovering that the debtor had given a preference or transferred his property, had the right at his election to abandon such proceedings and file a petition in bankruptcy against his debtor within four months, and the fact that by such proceedings he had secured a lien did not prevent his claim from being provable in bankruptcy, inasmuch as an adjudication would invalidate his lien, and place him on an equality with all other creditors.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 315.*]

4. BANKRUPTCY (§ 76*)—INVOLUNTARY PROCEEDINGS—INTERVENING CREDITORS.

A creditor who files a petition in bankruptcy has the right to ask other creditors to intervene when such intervention becomes necessary to preserve the proceedings.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 76.*]

In the matter of Alfred Smith, alleged bankrupt. Review of finding of referee that petition should be dismissed. Order of adjudication.

Irving Bacon, for petitioning creditors.

J. T. Gridley, for alleged bankrupt.

RAY, District Judge. April 12, 1907, the petitioner, John L. Alnutt, filed a petition in involuntary bankruptcy against said Alfred Smith, alleging that Smith owed debts in excess of $1,000, was insolvent, and neither a wage earner nor person engaged chiefly in farming or the tillage of the soil; also, that Smith's creditors were less than 12 in number. The petition also alleged that Alnutt was a creditor of said Smith having a provable claim against him "which amounts in excess of the value of securities held by him to over $500, and that your petitioner is not entitled to priority of payment of his said claim within the meaning of section 64b of the bankruptcy law of 1898, nor has your petitioner received a preference within the meaning of section 60a–b of such law as amended." The petition then set forth that such indebtedness consisted of a judgment for $1,048.93 entered and docketed in Cayuga county clerk's office February 7, 1907, transcript thereof filed in Tioga county February 8, 1907, and that such judgment and interest were wholly unpaid. The petition then alleged as an act of bankruptcy by Smith that February 2, 1907, he executed a mortgage of $2,020 on his real estate, and that same was recorded in the county where such property was located on the same day, and that same was given to secure the payment of a note held by one Charles F. Gridley and accrued interest thereon, and that such mortgage was given with intent to prefer such creditor over his other creditors; that on the same day said Smith committed an act of bankruptcy by transferring and conveying to his wife, Adelaide M. Smith, by warranty deed of that date and duly recorded, all his interest in his real estate, describing it, with intent to hinder, delay, or defraud his creditors or some of them. To this petition Smith interposed an answer, not denying the giving of the mortgage and deed, or insolvency at the time or at the time the petition was filed, but denying that such transfers were made with intent to

hinder, delay, or defraud his creditors, or any of them, or with intent to prefer one creditor over any other, and also alleging that Alnutt was a preferred creditor and entitled to priority of payment; that he was a judgment creditor having a judgment of record for the amount of his claim; and that he had more than 12 creditors.

A replication to the answer was duly filed, and, as the creditors were more than 12 in number, Henry A. Hompe and George Sweeting intervened as petitioning creditors, alleging themselves to be such, and filed an intervening petition. In giving his list of creditors Smith did not name either Hompe or Sweeting. He did name Alnutt. The referee to whom this matter was duly referred has found (1) that the creditors of Smith are more than 12 in number, of which there is no question; (2) that Sweeting is not the owner of a claim against Smith provable in bankruptcy and that his claim is not valid; (3) that the claim of Hompe, a judgment of $14.35 against Smith, was assigned to Hompe by Alnutt for the purpose of making him a creditor of Smith, and thus securing three creditors as petitioners in this proceeding; (4) that the claim of Alnutt, the original sole petitioner, consisted of a judgment unpaid, and that a proceeding supplementary to execution had been commenced and the usual injunction in such a proceeding obtained, and therefore is entitled to priority of payment and has and had, when the petition was filed, a specific lien, and cannot, therefore, be a petitioner herein; (5) that the mortgage referred to was not given with intent to prefer Gridley, the mortgagee, and is valid; and (6) that Smith's wife paid a full and fair present consideration for the real estate conveyed to her, and that same is valid. He makes no finding in the question of fraudulent intent, etc., as to the deed.

Alnutt, the petitioner, had sued Smith on a just claim, which Smith defended, and February 1, 1907, the action was tried and a verdict rendered in favor of Alnutt against Smith, and judgment was entered thereon February 7, 1907. On the evening of the same day, February 1st, Smith proposed to his wife, who was present at the trial, to sell his interest in all his real estate to her for $100, or she offered that on his proposal to sell to her, and Smith accepted, and there is no evidence that she did not pay the money. It is perfectly apparent that this was done for the purpose of hindering, delaying, and defrauding creditors, or Alnutt at all events. No sane man can doubt that fact. On the same day, or the next, February 2, 1907, Gridley, who then held and who for some time had held Smith's note for about $2,020, principal and interest, was sent for, and the mortgage referred to was given. It is contended that this was done in execution of a prior oral agreement to give a mortgage, but the facts remain that there was no agreement to execute it at that particular time or immediately after the rendering of the verdict in the suit referred to. It is obvious that the giving of the mortgage at that time was for the purpose of giving and securing to Gridley a preference over Alnutt, a lien in advance of the judgment to be entered, and that this was the intent and purpose of Smith. Intelligent and sane men are presumed to intend the well-known and obvious consequences of their own voluntary acts, and it cannot be rationally concluded that in sending for Gridley and executing that mort-

gage the day after the verdict referred to was rendered and which verdict was to be followed by a judgment and a lien on the real estate, Smith, well knowing he was insolvent, did not intend to prefer Gridley. A person has committed an act of bankruptcy who has (within the time fixed by the bankruptcy act) "conveyed, transferred, concealed, or removed, any part of his property with intent to hinder, delay or defraud his creditors or any of them; or (2) transferred, while insolvent, any portion of his property to one or more of his creditors with intent to prefer such creditors over his other creditors." Section 3, subds. 1, 2, of act entitled "An act to establish a uniform system of bankruptcy throughout the United States, approved July 1, 1898" (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]), as amended February 5, 1903 (chapter 487, 32 Stat. 797), and June 15, 1906 (chapter 3333, 34 Stat. 267 [U. S. Comp. St. Supp. 1909, pp. 1308, 1317]). Section 60a provides that:

"A person shall be deemed to have given a preference if, being insolvent, he has, within four months before the filing of the petition and before the adjudication * * * made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class."

Subdivision "b" of the same section (section 60) provides that such preference may be recovered by the trustee when the person to be benefited thereby "shall have had reasonable cause to believe that it was intended thereby to give a preference." The intent of the one receiving the deed or mortgage (transfer of property, subdivision 25, § 1, of the act) is entirely immaterial on the question whether or not an act of bankruptcy has been committed. So a person may transfer his property for a full and fair consideration, and receive that consideration, but, if it is done with intent on his part to hinder, delay, or defraud his creditors, the one making the transfer has committed an act of bankruptcy. Whether the transfer can be set aside or held to be a preference under sections 3 and 60 referred to, as to the grantee or mortgagee, is determined by other facts as we have seen. So, if the giving of the mortgage or deed was within the four months and the effect will be as stated in section 60, and the one receiving it had reasonable cause to believe a preference was intended, the fact that it was executed and delivered within the four months in execution of a prior oral agreement to execute it does not change the result or prevent the transfer being held a preference. In re Great Western Mfg. Co., 152 Fed. 123, 127, 128, 84 C. C. A. 341, where the court said:

"An agreement to mortgage or transfer is not a mortgage or a transfer. The title remains in the owner unincumbered by the mortgage until the mortgage or transfer is effected. When the agreement is made before, and the mortgage or transfer within, the four months, the title stands unincumbered by the latter at the commencement of the four months, and the proceeds of that title are pledged under the bankruptcy law for the benefit of all the creditors pro rata. Any subsequent mortgage or transfer withdraws that title or a portion of its value from these creditors, and a just and fair interpretation and execution of the act demands that such a mortgage or transfer should be adjudged voidable if it is otherwise so, and that the mortgagee or transferee should be remitted to his original agreement. In this way the property at the commencement of the four months and its value may be preserved for the general creditors, and the

mortgagee or transferee may retain every lawful advantage his earlier contract confers upon him. Any other course of decision opens a new and enticing way to secure preferences, nullifies every provision of the law to prevent them, and invites fraud and perjury. Hold that transfers within four months in performance of agreements to make them before that time do not constitute voidable preferences, and honest debtors would agree with their favored creditors before the four months that they would subsequently secure them by mortgages or transfers of their property, and just before the petitions in bankruptcy were filed they would perform their agreements. Dishonest men who made no such contracts might falsely testify that they had done so, and thus by fraud and perjury sustain preferential transfers and mortgages made within the four months to relatives or friends. The great body of the creditors would be left without share in the property of their debtor and without remedy, and a law conceived and enacted to secure a fair and equal distribution of the property of debtors among their creditors would fail to accomplish one of its chief objects. This court will hesitate long before it approves a rule so fatal to the most salutary provisions of the bankruptcy law, and our conclusion is: A mortgage or transfer of his property by an insolvent debtor within four months of the filing of a petition in bankruptcy against him, which otherwise constitutes a voidable preference, is not deprived of that character or made valid by the fact that it was executed in performance of a contract to do so made more than four months before the filing of the petition. Wilson v. Nelson, 183 U. S. 191, 198, 22 Sup. Ct. 74, 46 L. Ed. 147; In re Sheridan (D. C.) 98 Fed. 406; In re Dismal Swamp Co. (D. C.) 135 Fed. 415, 417, 418; In re Ronk (D. C.) 111 Fed. 154; Pollock v. Jones, 124 Fed. 163, 61 C. C. A. 555; Anniston Iron & Supply Co. v. Anniston Rolling Mill Co. (D. C.) 125 Fed. 974; Johnston v. Huff, Andrews & Moyler Co., 133 Fed. 704, 66 C. C. A. 534; In re Mandel (D. C.) 127 Fed. 863. In Wilson v. Nelson, 183 U. S. 191, 198. 22 Sup. Ct. 74, 46 L. Ed. 147, the debtor had given an irrevocable power of attorney to the creditor to confess judgment many years before. Judgment was confessed under it within the four months, and the Supreme Court held it to be a voidable preference. In Re Sheridan (D. C.) 98 Fed. 406, in Re Ronk (D. C.) 111 Fed. 154, and in Re Dismal Swamp Co. (D. C.) 135 Fed. 415, 417, 418, mortgages executed within the four months in performance of agreements to give them made more than four months before the filing of the petitions in bankruptcy were held to be voidable preferences, and this view seems to be sustained by the terms of the bankruptcy act, by the more cogent reasons, and by the weight of authority."

It is clear that Smith committed an act of bankruptcy within the four-month period. The referee went beyond his power when he decided that the deed and mortgage were both valid. The question was: Had Smith committed an act of bankruptcy?

The question remains, however, whether or not three creditors of Smith united in the petition as it finally stood. In other words, did two creditors of Smith having provable claims intervene and join in the proceeding as petitioning creditors? If this question is answered in the negative, it is immaterial whether or not Alnutt was a proper, or in a position to become a, petitioning creditor. The referee finds that the petitioner, Sweeting, one of the intervening petitioners, had no valid claim against Smith. March 19, 1907, Horace N. Humiston, by a writing duly acknowledged, assigned to said George Sweeting an account or claim of $9 for extra work, etc., alleged to have been performed by him for Smith and furnished him on or shortly before July 2, 1904. September 3, 1904, said Humiston filed a lien for work, labor, etc., done and furnished Smith between April 11, 1904, and August 5, 1904, amounting less payments to $359, and this included an item of $9 for extra work and material; the precise date of this item not being mentioned. It appears that Humiston was on the premises and doing

work in July, 1904. Thereafter, and about August, 1904, a suit was brought by Humiston for the foreclosure of such lien. The complaint set out that the main work and also extras were to be paid for when all work was completed. Both Smith and Alnutt were parties defendant and both answered. Smith's answer went generally to nonperformance and made no specific denial of the $9 item, and there was no special defense as to it. Later, and on or about the 27th day of January, 1906, that suit was settled, and Humiston executed and acknowledged and delivered to Alnutt a satisfaction of such lien, and same was discharged of record accordingly. Whether the claim against Smith for $9 in favor of Humiston has been paid so as to release Smith depends on the relation of the parties, and it is an important question whether or not it is merged in the large judgment in favor of Alnutt.

February 4, 1904, Alnutt contracted with Alfred Smith in writing to build a house on the premises mentioned, for which he was to receive $4,100, and $1,300 of which sum was payable on the completion of the contract by Alnutt. Humiston was a subcontractor to the knowledge of Smith and his wife. As Smith did not pay, or for other reasons, or at least as Humiston did not get his pay, he filed the lien on the premises mentioned. Smith did not pay, and thereupon Alnutt paid Humiston the amount of his lien, and the satisfaction thereof mentioned was executed and recorded. Smith had nothing to do with this. Thereafter, and March 14, 1906, Alnutt sued Smith in the Supreme Court, county of Cayuga, N. Y., to recover the balance due him on the contract and also certain extras, including an item of $9 for deadening felt, which was not the item of $9 for extra work, etc., of July 2, 1904, before referred to. Smith's answer, to which attention has been called, referred to the item of $9 set forth in the complaint. The first $9 item may have been furnished by Humiston under his agreement with Alnutt, and may have been the $9 item of his lien. It may be Humiston had nothing to do with that item. The complaint in that suit alleged a settlement as to amount due and an agreement between Smith and Alnutt that Smith would pay the amount when Alnutt had procured the lien to be satisfied or canceled. Alnutt paid Humiston the amount for which he had filed a lien, and this covered all items for work, etc., done by him as subcontractor under and pursuant to the contract. It did not necessarily include extra work done by Humiston in July, 1904, as it appears that Humiston got through his work in executing his contract with Alnutt in or about May, 1904. The work ordered by Smith in July and performed by Humiston was a personal matter between them, and could not be properly included in the notice of lien. Smith defended the suit brought by Alnutt, but was defeated, and the large judgment mentioned resulted. I do not think the evidence shows that Humiston did not perform the work and furnish the material in July he says he did. I am of the opinion it shows the work was performed and the material furnished at the request of Smith, and that it is a just and a valid claim. I therefore hold that Humiston had a valid claim of $9 against Smith provable in bankruptcy, and that his assignee, Sweeting, was a proper petitioning creditor. It is conceded that Alnutt had another judgment against Smith for $14.35, perfected

January 11, 1907, provable in bankruptcy, and it is shown that on the 11th day of April, 1907, Alnutt, for value, duly assigned same to Hompe. This was no part of the larger and subsequent judgment, and, as it was so assigned prior to the execution and filing of the petition in bankruptcy and is unpaid, I am unable to see why Hompe is not a proper petitioning creditor. We come, then, to the question whether or not Alnutt himself could file a petition. He was the owner of this judgment of $1,048.93, which after trial he had obtained against Smith. Execution was issued February 18, 1907, and returned wholly unsatisfied. Thereupon Alnutt instituted supplementary proceedings against Smith under section 2432, etc., Code Civ. Proc. N. Y., and he was examined and the situation developed. The order of reference was made April 2, 1907, and Smith was directed to appear before the referee appointed by the order on the 18th day of April, 1907. The order contained this clause:

"And the said Alfred Smith is hereby forbidden from making or suffering any transfer or other disposition of or interference with the property of which he is possessed, or in which he has any interest, legal or equitable, and not exempt from levy and sale on execution until further directions in the premises."

Smith had already and within four months sold and conveyed all his real estate, all his property. Alnutt could have pursued the matter and secured a receiver—probably—who could then have brought an action to set aside the deed and the mortgage on the ground they were made with intent to hinder, delay, or defraud creditors. But he could not in that way have secured the benefit of the bankruptcy act as to preferences. But the petitioner, Alnutt, had the right to abandon that proceeding supplementary to execution and file a petition in bankruptcy. He had a provable claim. Section 63a, Bankr. Act.

Even if he has a claim secured in part, which this judgment is not, he may prove for the debt above the security and deducting the security have it allowed for the balance. Sections 57e, 57g. Even a preferred creditor may be a petitioner, prove his claim, surrender his preference, and have the claim allowed. Stevens v. Nave-McCord M. Co., 17 Am. Bankr. Rep. 609, 615–617, 150 Fed. 71, 80 C. C. A. 25; In re Douglass Coal & Coke Co. (D. C.) 12 Am. Bankr. Rep. 539, 551, 131 Fed. 769; In re Hornstein (D. C.) 10 Am. Bankr. Rep. 308, 321, 122 Fed. 266; Collier on Bankruptcy (7th Ed.) 634, 635. Here Alnutt on the hearing before the referee expressly offered to surrender any lien or preference he had obtained, if any. Again, the moment Smith is adjudged a bankrupt the lien, assuming there is one, falls, having been obtained within four months of the filing of the petition. See section 67f of the act, which so far as material reads as follows:

"That all levies, judgments, attachments, or other liens obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by the levy, judgment, attachment, or other lien shall be deemed wholly discharged and released from the same, and shall pass to the trustee as a part of the estate of the bankrupt, unless the court shall, on due notice, order that the right under such levy, judgment, attachment, or other lien shall be preserved for the benefit of the estate; and thereupon the same may pass to and shall be preserved by the trustee for the benefit of the estate as aforesaid."

Hence, assuming that under the authority of Duffy v. Dawson, 2 Misc. Rep. 401, 21 N. Y. Supp. 978, the proceedings supplementary to execution gave Alnutt, as a vigilant judgment creditor, a lien on all the equitable assets of Smith, with the right to pursue the remedies given by the Code of Civil Procedure, including an equity action through a receiver to set aside the deed to the wife and the mortgage referred to, he, Alnutt, well knew that other creditors of Smith could defeat his whole proceeding and the lien of his judgment at any moment by filing a petition in bankruptcy, and he elected to file one himself well knowing that his supplementary proceedings and any lien created or preference gained thereby as well as the lien of his judgment would fall the moment an adjudication in bankruptcy was made. The referee, as evidenced by the section of the bankruptcy act referred to by him in the findings or conclusions of law, proceeded on the theory that as section 64b, subd. "5," and which section relates to "debts which have priority," provides that the debts to have priority of payment by the trustee in bankruptcy are (5) "debts owing to any person who by the laws of the states or the United States are entitled to priority," this debt on this judgment owing by the bankrupt to Alnutt would be entitled to priority of payment. This theory absolutely ignores the fact that the judgment and all proceedings to enforce it, including the supplementary proceedings, would fall, as a lien or debt entitled to priority, by virtue of the provisions of section 67f of the act above quoted. I am not disposed to hold that judgment creditors who have obtained judgments within four months on discovering that their debtors in fraud of the bankruptcy act have disposed of their property may not abandon remedies by execution and supplementary proceedings in aid thereof and themselves institute bankruptcy proceedings, inasmuch as their liens, if any, fall the moment an adjudication in bankruptcy is pronounced. In view of the fact that all liens created within four months of the filing of the petition fall of their own weight under the provisions of the section quoted, reason and justice dictate that creditors having such liens, on discovering the true condition of the alleged bankrupt, and that the pursuit of remedies under their liens and to enforce same would be unavailing, may institute proceedings in bankruptcy and enforce the provisions of the bankruptcy act. If they have reduced their claims to judgment duly docketed, and have thereby created a lien on the real estate of their creditor, are they compelled to proceed to issue execution, levy and advertise a sale with full knowledge that other creditors may institute bankruptcy proceedings, and make their efforts and expense fruitless? I think not. Having such a lien, they may file a petition in bankruptcy and proceed under that law. They know their lien as such is made void by the very act they invoke in case adjudication is made. It is not an experiment with the law, or an attempt to evade it, or to enforce their lien and the bankruptcy act at one and the same time. From the necessities of the case, in view of the bankruptcy act, it is the honest method to pursue. In this case Alnutt entered his judgment, issued execution, and found it returned unsatisfied. He instituted proceedings supplementary to execution, which in one aspect is a bill of discovery, and found that on

the day following the verdict of the jury on which the judgment was entered Smith had first mortgaged his property to secure an old debt, and then deeded it away to his wife for the nominal consideration of $100. Thereupon he abandoned that proceeding and instituted this. He could only pursue his remedy against Smith in that proceeding by procuring the appointment of a receiver and having a suit commenced to set aside the mortgage and the deed. See Ward v. Petrie, 157 N. Y. 301, 51 N. E. 1002, 68 Am. St. Rep. 790; Stephens as Receivers v. Meriden Co., 160 N. Y. 178, 54 N. E. 781, 73 Am. St. Rep. 678. That he did not do for the reasons stated, but immediately resorted to the bankruptcy law where, as he knew, all creditors except lienors having liens more than four months old would share equally.

I find nothing in the bankruptcy act which, even by implication, denies the right to a secured creditor or a judgment creditor to file a petition in bankruptcy against the one owing the debt. The language of the act and the plain inferences to be drawn are to the contrary.

Section 59a and b of the act provide:

"Who may file and dismiss petition. (a) Any qualified person may file a petition to be adjudged a voluntary bankrupt.

"(b) Three or more creditors who have provable claims against any person which amount in the aggregate, in excess of the value of securities held by them, if any, to five hundred dollars or over: or if all of the creditors of such person are less than twelve in number, then one of such creditors whose claim equals such amount may file a petition to have him adjudged a bankrupt."

Here is no exclusion of creditors having a lien on the property of the alleged bankrupt. All claims may be proved, unless of a class or classes of which this is not one, and, if there be a partial security by way of lien or otherwise, same may be allowed for the balance over the security, and in certain cases the lien or incumbrance or preference must be surrendered before the claim can be allowed. All this is made plain by the provisions of section 57a–g.

The alleged bankrupt by his attorney now raises the question that the assignment of the small judgment to Hompe shows on its face that the date has been changed. Inspection indicates that this is true, but no such question was raised before the referee, acting as special master. Mr. Hompe was asked if he purchased the judgment on or about the date of the assignment, which is dated April 11, 1907. The attorney for the bankrupt objected, and thereupon the assignment itself bearing that date was put in evidence without question that it was executed and delivered the day it bears date. No evidence whatever was given that it was not in fact executed and delivered the day it bears date. No such question was raised and no opportunity was given to explain the erasure, if one was made, and the placing of the figures "11" and the word "April" in the assignment. I must assume, in the absence of evidence to the contrary, that the paper was executed and delivered on the day it bears date. The change creates suspicion, but suspicion is not evidence, and does not rise to the dignity of proof. The alleged bankrupt seemed content at the time to rest upon the paper itself. Mr. Hompe intervened in May, 1907, as is conceded, and this fact negatives the claim that the judgment was not assigned until June 10, or June 20, 1907. The attorney for the petitioning creditor

sought to go into the actual facts as to the purchase and assignment, but was prevented by the objection of the alleged bankrupt. I find no justification in the evidence for a holding that Hompe did not purchase and take an assignment of that judgment on the 11th day of April, 1907. Clearly, there is no evidence to support a finding that Alnutt split up any claim he had as it is proved beyond all question that he never owned that judgment although it stood in his name. It was a judgment for costs, and belonged to Mr. Bacon. He was the creditor until it was assigned to Hompe. A creditor who files a petition in bankruptcy has the right to request others to intervene when such intervention becomes necessary to preserve the proceeding.

The result is that the findings of the referee or special master are disapproved, reversed, and set aside. There will be a finding and decision that the alleged bankrupt, Alfred Smith, committed an act of bankruptcy as charged in the petition; that Alnutt, Sweeting, and Hompe were creditors having provable claims aggregating over $1,000 at the time the petition was filed; and that Alnutt was a proper petitioning creditor, and that Sweeting and Hompe were proper intervening creditors and duly intervened.

There will be an order of adjudication accordingly.