## In re BIRD.

(District Court, D. Minnesota. Fourth Division. June 27, 1910.)

1. EVIDENCE (§ 441\*)—WRITTEN CONTRACT—PAROL EVIDENCE.

Where an assignment of certain collaterals provided that any surplus remaining after the assignee's debt was paid should be returned to the assignor, evidence of the assignee's agent that the assignment was taken in full settlement of the assignee's claim was inadmissible as contradicting the assignment.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2038; Dec. Dig. § 441.\*]

2. BANKRUPTCY (§ 161\*)—PLEDGED SECURITIES—ASSIGNMENT OF EQUITY—EFFECT.

A bankrupt having in June, 1906, assigned certain securities to a bank to secure payment of a debt owing to the bank, on the same date executed to the A. Company, another creditor, an assignment of all his equity in the securities. The equity assigned was to be determined only after the bank's debt and interest had been fully satisfied, the A. Company agreeing to return any surplus remaining after satisfaction of its claim. Nearly two years after, while the securities remained in the possession of the bank, and when its claim had been paid, except the sum of $165.82, a bankruptcy petition was filed against the assignor and he was adjudged a bankrupt. *Held*, that such assignment of the bankrupt's equity in the pledged securities was valid both under the Bankruptcy Law (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]) and under the law of Minnesota (Rev. Laws 1905, § 4302) without registration, and took effect from the date of delivery and notice to the bank.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 261; Dec. Dig. § 161.\*]

3. BANKRUPTCY (§ 161\*)—STATUTES—CONSTRUCTION—TAKE POSSESSION OF—"DELIVERY AND TAKING POSSESSION."

Bankr. Act, July 1, 1898, c. 541, § 3b, 30 Stat. 547 (U. S. Comp. St. 1901, p. 3422), provides that the four-month period shall not expire until four months after the date of the recording or registration of the transfer or assignment, if by law such recording or registration is required or permitted, or if it is not, from the date when the beneficiary takes notorious, exclusive or continuous possession of the property, unless the petitioning creditors have received actual notice of such transfer or assignment. *Held* that, where a bankrupt, two years prior to adjudication, assigned his equity of redemption in certain pledged securities, and notified the pledgee of such assignment, such notice was equivalent to a delivery and a taking possession thereof by the assignee within the bankruptcy act.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 261; Dec. Dig. § 161.\*]

4. BANKRUPTCY (§ 161\*)—ACCOUNTS—ASSIGNMENT—COLLECTION—PREFERENCES.

When an assignment of accounts is made by a debtor more than four months prior to bankruptcy, the fact that the accounts are not collected by the creditor within four months does not make the transaction a preference.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 161.\*]

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In the matter of Francis J. Bird, bankrupt. On certificate to review the determination of a referee directing the delivery of certain pledged securities to the Foster-Armstrong Company. Affirmed.

Dodge & Webber, for creditors.

Welch, Hayne & Hubachek, for Armstrong Piano Co.

WILLARD, District Judge. On April 8, 1908, a petition for involuntary bankruptcy was filed against Bird, and he was adjudicated a bankrupt on the 5th day of May, 1908. On June 9, 1906, the Northwestern National Bank of Minneapolis had in its possession a large quantity of promissory notes and conditional sale contracts belonging to Bird, which notes and contracts had been pledged to the bank by Bird, to secure the payment of a debt owing to the bank by him. On the same day—June 9, 1906—almost two years before the petition in bankruptcy was filed, Bird and the Foster-Armstrong Company made the following contract in writing:

"For the consideration of one dollar and other valuable consideration, I hereby assign all my right, title, and interest in the equity of collateral paper held by the Northwestern National Bank of Minneapolis, Minn., against my loan of present date amounting approximately to four thousand three hundred seventy-eight dollars ($4,378) and interest due and accruing thereon, to the Armstrong Piano Company of Rochester, N. Y., and hereby guarantee the payment of same, together with interest, cost of collection and attorney fees, at maturity or any time thereafter. I further agree that, should any of the instruments be repossessed and be resold, should any deficiency arise by reason of such sale, to pay same, together with all costs of repossession and sale, and hereby waive notice of nonpayment, demand, notice of protest and suit against the signer, and agree that any extension which may be granted to the maker thereof shall not in any manner release the undersigned. Equity referred to shall be determined only after said bank shall have their loan and all interest due thereon fully satisfied. I further agree and guarantee to the Armstrong Piano Company, that the said equity shall net not less than one thousand dollars and interest thereon, and it is further agreed and understood that, should said equity net in full claim of Armstrong Piano Co. amounting to $1,920 and interest due thereon, the surplus remaining thereafter shall be returned to me.

"Dated this ninth day of June nineteen hundred six, at Minneapolis, Minn.
                                                       "Francis J. Bird. [Seal.]
                                                       "Armstrong Piano Co.,
                                                             "J. H. Shale, Treas.

"Witness: May A. Smith."

To this contract was attached and made a part thereof a list of the notes and accounts therein referred to. Before signing the contract the agent of the Foster-Armstrong Company went with Bird to the Northwestern Bank, and there examined all of the notes and contracts, made a list thereof, and ascertained the amounts that had been paid thereon. After the contract was signed a copy of it was left with the Northwestern Bank, and the officer in charge of the matter refused to accept the contract; but that refusal of course could not in any way affect the rights of either Bird or of the creditor. Since June 9, 1906, the bank has collected from the notes and contracts sufficient money to pay its claim against Bird, except the sum of $165.82, and on October 3, 1908, upon a petition of the Foster-Arm-

strong Company made in this bankruptcy proceeding, the bank disclosed that it had in its possession the notes and contracts mentioned and described in a certain Exhibit A, and that the balance of its said claim against said bankrupt was at that time the sum of $165.82. The bank then and there agreed to turn over and did turn over to the trustee in bankruptcy the notes and contracts described in said exhibit, it being then and there also agreed by all of the parties that said trustee should take the whole sum of the proceeds thereof, and pay the bank $165.82, and ·hold the balance for such person or persons as might by the court be found to be entitled thereto. The Foster-Armstrong Company has filed its petition in this proceeding, asking for an order directing that the said notes and contracts be turned over to the trustee, or such sums as have been collected thereon be turned over or paid to it. A hearing was had upon such petition, the referee made an order granting the prayer thereof, and that order the trustee is now seeking to have reviewed, his claim being that the transaction constituted a preference voidable under section 60 of the bankrupt act (Act July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3446]).

The bankrupt testified on the hearing that he signed the contract and delivered it to the creditor, merely to be used by the creditor in certain negotiations with the Northwestern Bank, and that it was to be returned by him if those negotiations failed. This was denied by the agent of the creditor who conducted the transaction for it. It is apparent that the testimony of the bankrupt is entirely insufficient to defeat this contract which on its face was a present transfer of the bankrupt's interest in this property. On the part of the creditor testimony was given by said agent to the effect that the document was taken in full settlement of its claim against Bird. This testimony contradicts the plain terms of the contract, for it is therein said that any surplus remaining after the debt to this creditor was paid should be turned over to Bird. The testimony therefore was incompetent. The trustee claims that that part of the contract which says, "Equity referred to above shall be determined only after said bank shall have their loan and all interest due thereon fully satisfied," indicated that this contract of assignment was not to take effect until after the bank had been paid in full.

It is somewhat difficult to determine why that clause was inserted in the contract, but in no event can it have the effect of destroying the absolute assignment made in the first part of the contract, which by its terms took effect at once. It probably was inserted merely to indicate that the creditor should have no claim upon any of the notes or con-tracts until the bank had been paid in full. The document must there-fore be taken as it stands. In legal effect it was a transfer and assignment on June 9, 1906, of all the interest which Bird had in the personal property then in the possession of the Northwestern Bank as security for a debt then due from Bird to the Armstrong Company. It was in fact a second pledge to one creditor of personal property already pledged to another creditor. That such a contract as this is entirely valid at the common law does not admit of doubt. That it was a valid contract under the laws of Minnesota is equally clear. The

statutes of Minnesota (Rev. Laws 1905, § 4302), provide that the interest of the pledgor can be levied upon and sold under execution. If that is true, it is certainly true that a pledgor himself can convey his interest in the pledged property. The trustee claims, however, that whatever may have been the legality of this transaction at common law, and under the laws of Minnesota, it is provided in the bankrupt law, and particularly in the last part of section 60a, as amended by Act Feb. 5, 1903, c. 487, § 13, 32 Stat. 799 (U. S. Comp. St. Supp. 1909, p. 1314), that:

"Where the preference consists of a transfer, such period of four months shall not expire until four months after the date of the recording or registering of the transfer, if by law such recording or registering is required."

There is nothing in the law of Minnesota which requires the recording or registering of a transfer by a pledgor of his interest in the property pledged. But section 3b of the act provides that:

"Such time shall not expire until four months after the date of the recording or registering of the transfer or assignment. * * * If by law such recording or registering is required or permitted, or, if it is not, from the date when the beneficiary takes notorious, exclusive or continuous possession of the property, unless the petitioning creditors have received actual notice of such transfer or assignment."

The Circuit Court of Appeals for this circuit in the case of Long v. Farmers' State Bank, 147 Fed. 360, 77 C. C. A. 538, 9 L. R. A. (N. S.) 585, has held that:

"Said provisions of sections 3 and 60 are to be read together. When so read there can be no permissible question but that the date of the preference referred to in section 60 is the same as that referred to in section 3b, which, as applied to the facts of this case, is the date when the transferee takes possession of the property."

The trustee therefore claims, under this decision, that although the contract in question was made almost two years before the bankruptcy, yet the creditor did not take possession of the property assigned four months before the petition was filed against Bird, and, in fact, never did take possession, is not now in possession, and that the contract therefore is void as a preference.

The question to be determined is, What does the phrase "take possession of" mean when applied to a case of this kind? In Whitaker v. Sumner, 20 Pick. (Mass.) 399, Chief Justice Shaw said, on page 405:

"It seems now well settled that, when personal property is under a pledge or lien, whether created by operation of law, or by the act of the owner, the general property remains in the owner, and that he may transfer it by a proper contract, and upon a good consideration, subject only to the lien. Tuxworth v. Moore, 9 Pick. [Mass.] 347 [20 Am. Dec. 479]; Fettyplace v. Dutch, 13 Pick. [Mass.] 388 [23 Am. Dec. 688]. And in such case, as the actual custody and possession of the goods for the time being is in the hands of the party having the lien, it follows that a constructive or symbolical delivery is sufficient to pass the property. An order by the vendor upon the keeper, or if the contract of sale or conveyance be in writing, proper and satisfactory notice of the conveyance by the vendee to the holder constitutes such constructive delivery. Where goods are lying in a warehouse, although subject to a lien for keeping, notice to the warehouse keeper, where all the other requisites of a sale are proved, is equivalent to a delivery. After such

notice the keeper ceases to be the agent of the vendor, and becomes the agent of the vendee, and thus the goods are placed under the effective control of the vendee, as they would be by an actual delivery. Here notice was given by the plaintiff to Horr, who had the custody of the goods, with no claim of title but that of a pledge; the property passed to the plaintiff subject to that lien."

In the case of In re Ozark Cooperage & Lumber Co. (decided by the Circuit Court of Appeals of this circuit on May 3, 1910) 180 Fed. 105, the court, speaking of the Missouri statute relating to change of possession, said:

"Some kinds of personal property may be readily delivered from hand to hand, and interested persons may rightfully expect that method to be observed. In other cases the character of the property and the circumstances of its situation preclude such a delivery; and other indicia of a change of ownership, such as signs, brands, and marks are generally accepted as sufficient. Each case however, as it arises, should be determined by its own peculiar facts and circumstances."

In the case of Thompson v. Fairbanks, 196 U. S. 516, 25 Sup. Ct. 306, 49 L. Ed. 577, the court said on page 521, of 196 U. S., on page 308, of 25 Sup. Ct. (49 L. Ed. 577):

"There is no pretense of any actual fraud being committed or contemplated by either party to the mortgage. Instead of taking possession at the time of the execution of the mortgage, the defendant had it recorded in the proper clerk's office, and the record stood as notice to all the world of the existence of the lien as it stood when the mortgage was executed, and that the defendant would have the right to take possession of property subsequently acquired as provided for in the mortgage. The bankrupt was, therefore, not holding himself out as unconditional owner of the property, and there was no securing of credit by reason of his apparent unconditional ownership. The record gave notice that he was not such unconditional owner. There was no secret lien, and if defendant cannot secure the benefit of this mortgage, which he obtained in 1869, as a lien upon the after-acquired property, yet prior to the title of the trustee for the benefit of creditors, it must be because of some provision of the bankruptcy law, which we think the court ought not to construe or endeavor to enforce beyond its fair meaning."

And again on page 524, of 196 U. S., on page 309, of 25 Sup. Ct. (49 L. Ed. 577):

"The principle that the taking possession may sometimes be held to relate back to the time when the right to do so was created, is recognized in the above case. So in this case, although there was no actual existing lien upon this after-acquired property until the taking of possession, yet there was a positive agreement as contained in the mortgage and existing of record, under which the inchoate lien might be asserted and enforced, and when enforced by the taking of possession, that possession, under the facts of this case, related back to the time of the execution of the mortgage of April, 1891, as it was only by virtue of that mortgage that possession could be taken."

This case was followed in Humphrey v. Tatman, 198 U. S. 91, 25 Sup. Ct. 567, 49 L. Ed. 956. The law in Minnesota is absolutely the same as the law in Massachusetts referred to in the case of Thompson v. Fairbanks. In Prouty v. Barlow, 74 Minn. 130, 76 N. W. 946, the Court said on page 133, of 74 Minn., on page 948, of 76 N. W.:

"This being so, the case is a very simple one; for conceding, without so deciding, that the parties to the farm contract were co-tenants in the crop, still the plaintiff was given by the terms of the contract a lien on the ex-

ecution debtor's share of the grain, by way of a mortgage or pledge. The defendant's counsel say it was a mortgage, but it is immaterial which it was. The findings show that this lien was based upon a valuable consideration, and created under circumstances which rebut any inference of fraud in the premises. The case then falls within the rule that, if a mortgagee or pledgee takes possession of the mortgaged or pledged chattels before any other lien attaches thereto, his title is valid as against subsequent attachment or execution creditors, there being no fraud in fact, although the mortgage was not filed or the chattels delivered when the contract of pledge was made. Jones, Chat. Mort, §§ 178, 245; Jones, Pledges, § 38; Baker v. Pottle, 48 Minn. 479, 51 N. W. 383; Clark v. Richards Lumber Co., 68 Minn. 282, 288, 71 N. W. 389."

From 1906 until the bankruptcy this personal property was never in the possession of the bankrupt. No creditor ever became such relying upon the possession by Bird of these notes. If any one had inquired of Bird with regard to the notes and contracts he would have learned that they were in the possession of the Northwestern Bank. If inquiry had been made of the Northwestern Bank the creditor would have learned from it that it held them to secure a debt due to itself, and that it had been notified of an assignment of the bankrupt's interest in them to another creditor, the Foster-Armstrong Company.

That this contract of June 9, 1906, was made in good faith there can be no doubt. The contention of the trustee that notice should then have been given by Bird to all of his creditors of this transfer would effectually prevent a solvent merchant who happened to be in debt, from making use of his assets for the purpose of carrying on his business. It might well happen that such a person had a part of his property pledged for an amount small in comparison with the value of the property. To require him, in order to sell his interest in that property or to pledge it a second time, to give notice to all of his creditors, would be something that is unknown in the business world, and would practically prevent his making use of his equity therein. The important thing is, not that the property be in the possession of the creditor, but that it be out of the possession of the debtor.

Several cases have been cited by the trustee to support his position, but in all of them the property in question was within four months of the bankruptcy in the possession of the bankrupt himself. The case of Long v. Farmer's State Bank, already cited, was a case where the policy of insurance was in the possession of the bankrupt within that period. In the case of In re Klingaman (D. C.) 101 Fed. 691, the binding twine and the proceeds of the sale thereof were in the possession of the bankrupt within four months of his bankruptcy. In Johnston v. Huff, etc., Company, 133 Fed. 704, 66 C. C. A. 534, the debtor collected from the railroad company until within a day of his bankruptcy claims against the railroad company which he had assigned to a creditor nearly a year before. Notice of that assignment was not given to the railroad company until one day before the petition was filed. In English v. Ross, 140 Fed. 630, the mortgages were not filed until within four months of the bankruptcy, and during all that time the real estate remained in the possession of the bankrupt. In McElvain v. Hardesty, 169 Fed. 31, 94 C. C. A. 399, decided by the Cir-

cuit Court of this circuit, the document in question was by law required to be recorded, and was kept from the record until the four months began to run, and during that time the property remained in the possession of the bankrupt.

When an assignment of accounts is made more than four months prior to the bankruptcy, the fact that the accounts are not collected by the creditor until within four months does not make the transaction a preference. Lowell v. International Trust Company, 158 Fed. 781, 86 C. C. A. 137.

The order of the referee is in all things affirmed.