## POLLOCK v. JONES.

### (Circuit Court of Appeals, Fourth Circuit. July 17, 1903.)

### No. 480.

1. PARTNERSHIP—POWER OF PARTNER TO BIND FIRM—SEALED INSTRUMENTS.
   Under the law of South Carolina, a partner cannot bind his firm by a sealed obligation or conveyance without the authority or ratification of his copartner.

2. BANKRUPTCY—PREFERENCE—MORTGAGE.
   A mere promise by a debtor at the time the debt was contracted to give a mortgage to secure it, without specifying the nature of the mortgage or the property on which it was to be given, does not create a mortgage, and the giving of one on a subsequent renewal of the debt, at a time when the debtor is insolvent, and within four months prior to his bankruptcy, constitutes a transfer of property to secure an antecedent debt, and creates a preference.

¶ 2. See Bankruptcy, vol. 6, Cent. Dig. § 263.

**8.** SAME—VALIDITY OF MORTGAGE—INTENTION TO HINDER OR DELAY OTHER CREDITORS.

A chattel mortgage given by a partner while the firm was insolvent, and within four months prior to its bankruptcy, to secure a single creditor, and covering all of the property of the firm, the fact not being disclosed at the time or afterward to his partner, must be held to have been given on his part with the intent to hinder, delay, or defraud his other creditors, and is void, under Bankr. Act July 1, 1898, § 67e, 30 Stat. 564, 565, c. 541 [U. S. Comp. St. 1901, p. 3449].

**4.** ASSIGNMENT FOR BENEFIT OF CREDITORS—MORTGAGE COVERING ALL DEBTOR'S PROPERTY—VALIDITY.

Under the law of South Carolina, such a mortgage also amounts to a general assignment, and is void under Civ. Code, § 2647, because preferential.

Appeal from the District Court of the United States for the District of South Carolina, in Bankruptcy.

This case comes up on appeal from the District Court of the United States for the district of South Carolina, sitting in bankruptcy. J. D. Jones and J. W. Duff were copartners in a general business of merchandising at Blacksburg, S. C., under the firm name of Jones & Duff. Jones, the senior partner, lived at Gaffney's, some distance from Blacksburg, and the active management of the business was in the hands of Duff, a resident of Blacksburg. Jones visited Blacksburg from time to time, and examined into the affairs of the firm, as shown to him by his partner. One of these visits was shortly before the 15th July, 1902. At this time the accounts of the firm, as exhibited and explained by Duff, showed an apparent surplus of from $3,000 to $3,500. Duff died suddenly on the 14th July, 1902. Upon his death it was at once discovered that the firm was utterly insolvent. Many claims unknown to and never disclosed to Jones appeared in existence, among them the claim of A. H. Pollock, the subject-matter of this appeal. Jones, the surviving partner, thereupon, on the 21st July, 1902, filed his petition in voluntary bankruptcy, making up the schedules as best he could. He was duly adjudicated a bankrupt on that day. The case was referred to G. W. Speer as referee, and J. R. Healen was subsequently made trustee. He possessed himself of all the stock in trade and assets of the firm, and under an order of the court has disposed of the stock, obtaining $3,588. Other assets brought about $200. The open accounts are of the face value of $2,000 or $3,000. At the time of the hearing of this case below the debts proved against the estate were over $12,000 in the aggregate. Mr. Jones says in his testimony that his examination of the books of the firm showed that the great volume of this indebtedness was created between 1st February and 1st May, 1902. The record does not show that the books were produced in evidence. On the day of the death of Duff, A. H. Pollock placed upon record a chattel mortgage, dated 28th May, 1902, covering the entire stock, dry goods, groceries, notions, hats, shoes, furniture, fixtures, safe, and everything connected with the business of Jones & Duff; all the stock of goods then in the storehouse belonging to R. R. Brown, in Blacksburg, S. C., and all goods, both dry goods and groceries, that may have to be added to said stock and in said storehouse; one bay horse and one one-horse wagon; also all crop, buggies, wagons, and household goods; two shares stock in the Blacksburg Spinning & Knitting Mill; 100 cords wood, more or less, situated on lands of Mariah Young, in said county and state; also all open accounts at that date on the books of Jones & Duff; all notes, liens, and mortgages payable to Jones & Duff, a list of which was intended to be attached to the mortgage, which list is made part of the mortgage, the same appearing in ledger No. 5 of the said firm—the mortgagor, Duff, agreeing to pay Pollock all expenses that he may incur in the collection of the note and mortgage. Default in payment of any notes secured by the mortgage renders the whole sum due, with full power of sale in the mortgagee in case of default. This mortgage was given to secure a note in the aggregate sum of $2,000, dated 28th May, 1902, in installments payable June 25, 1902, $500; July 25, 1902, $500; September 25, 1902, $500;

October 25, 1902, $500—which note to bear interest at 8 per cent. per annum after maturity, and 10 per cent. attorney's fee in addition thereto if collected by suit. The mortgage was signed in the firm name, with the seal attached, and the note secured by the mortgage is also a sealed note, the seal following the name of the firm. All the description of the property mortgaged was either written or typewritten, except the words: "Also all my crop, buggies, wagons, and household goods," etc. A statute of South Carolina passed in 1901 (Civ. Code S. C. § 3002) requires property mortgaged in a chattel mortgage to be described in writing or typewriting, but not printing on the face of the mortgage; otherwise the mortgage shall be invalid. On the 29th July, 1902, A. H. Pollock proved before the referee a debt of $2,000, and 10 per cent. attorney's fees, consideration of which is stated to be cash loaned. There is no set-off or counterclaim to the same, the proof of debt stating that the only securities held for it was this mortgage, and declaring that the lien of the mortgage is neither waived nor released by proving the same, but the same is asserted. The history of this mortgage as detailed by Mr. Pollock is that he sold to the firm of Jones & Duff about the 1st February, 1902, cotton for the price of $1,040; that he took no security, as he trusted the firm. On the 29th April thereafter Duff told him that he had the money to pay him, but that he wanted more money, and then proposed that Pollock would add $960 to the debt, making in all $2,000, and at the same time promised to give him the mortgage. The character of the mortgage was not specified. Pollock consented, and deposited $960 to the credit of Jones & Duff in bank, and took four notes, bearing date 29th April, 1902, for the amounts and for the periods subsequently specified in the note of the 28th May. No mortgage was executed at the time, Pollock considering the firm perfectly good, but on the 28th of May, 1902, the mortgage was executed and delivered to Pollock, who did not put it upon record until the death of Duff. The statute law of South Carolina requires a mortgage to be recorded within 40 days from the date of execution, in which case it constitutes lien from the day of execution. If recorded after 40 days, it creates a lien only after the date of recording. As has been seen, the notes and mortgage were signed and sealed by Duff in the name of the firm; Jones, the other partner, never having authorized a transaction of this character, knowing nothing of the transaction, and never having been informed of the transaction either by Duff or Pollock, until the mortgage was recorded upon the death of Duff. The court below finds that there is no ground to believe Pollock knew that the firm was insolvent at the time the mortgage was executed, but the judge also finds that at that date, and at the date of the loan, on April 19th, the firm was insolvent. Pollock having presented his claim, it was resisted by the general creditors and the trustee acting in their behalf. The case was referred to the referee, who found that Duff had no authority to sign and seal the notes or to seal the mortgage. He also found that this transaction with Pollock was unlawful preference under the bankrupt act, and a claim for a lien invalid. When the case came before the court below the conclusion of the referee as to the invalidity of the claim was sustained. An appeal was allowed, and the case is here on assignment of error.

Hill Montague and N. W. Hardin, for appellant.

W. S. Hall, for appellee.

Before SIMONTON, Circuit Judge, and MORRIS and KELLER, District Judges.

SIMONTON, Circuit Judge (after stating the facts as above). There can be no doubt that under the law of South Carolina a sealed note given by one member of a firm creates no obligation against the firm, unless the partner so signing and sealing has authority from his copartner at the time to do the act, or unless when the act is brought to the knowledge of the other partner he acknowledges it or ratifies and confirms it. The evidence in this case shows that Jones never

knew of the execution of the note or of mortgage until after the death of Duff, and that he never acknowledged, assented to, or ratified it, although both Duff and Pollock had frequent opportunity of informing him of the transaction. This act of Duff, being unauthorized, did not bind the firm. Sibley v. Young & Napier, 26 S. C. 415, 2 S. E. 314; Hull v. Young, 30 S. C. 121, 8 S. E. 695, 3 L. R. A. 521. In the case first quoted the Supreme Court of South Carolina says: "Here the instrument sued upon is a single bill, which the law requires shall be executed under seal, and hence the proposition contended for by the appellants cannot be sustained." That was that the seal being unnecessary it did not affect the transaction. "It is very true that the plaintiffs might have taken a promissory note to secure the payment of the amount due them by defendants, which Napier would have had authority to give in the name of the firm, but they chose to take a different security, one of such a character as Napier had no authority to give, and when they come to enforce such security they cannot avail themselves of the protection which the law would have afforded them if they had seen fit to take a different security. Indeed, if the proposition contended for by appellants should be admitted, we do not see how the question whether a partner could be made liable on a sealed note, the execution of which he had not authorized or ratified, could ever arise; for it might always be said in such a case that the debt secured by the sealed note might have been evidenced by a promissory note, and therefore all the partners should be held liable. The question turns upon what has been done, and not upon what might have been done. The plaintiffs elected to secure their claim by an instrument of such a character as required a seal, and, under the well-settled law, when they bring their action on such a paper they cannot recover except upon the proof that it was executed by proper authority or has been subsequently ratified." In South Carolina a sealed note is synonymous with a single bill. In the same case it had been argued that placing the seal on the note was surplusage, and might be disregarded. This the court emphatically denied.

This consideration alone would sustain the conclusion reached below. But it is a case made under the bankrupt law, and the court below based its conclusion entirely upon the provisions of that law, and this point will now be discussed.

When the notes for $2,000 were made, subsequently consolidated into one note, they covered a pre-existing indebtedness of $1,040, and a cash loan of $960, as of the 29th April, 1902. At that time no security was given for the $2,000. Pollock says that a mortgage was promised. He is the only witness to this point. Apart from the fact that he is detailing occurrences between himself and a party then deceased, in a suit between himself and the assignee in bankruptcy of the party deceased, and so his evidence was incompetent under the statute law of South Carolina in such case made and provided (Code Civ. Proc. S. C. § 400), we are of the opinion that the bare promise to give security, not expressing in terms the character and subject-matter of the security, could not create either an equitable or a legal mortgage. So the loan of $2,000 at the date of the mortgage of the 28th of May was for unsecured antecedent debt, both as to the $1,040

and the $960. So the validity of the transaction must be determined as of that date. The referee has found, and his finding is sustained by the court, that at that date Jones and Duff, the mortgagors, were insolvent. There is no obvious error in the application of the law to this fact, and no important mistake in the evidence. This conclusion, coincided in by the referee and the judge, must be accepted. Fisher v. Shropshire, 147 U. S. 146, 13 Sup. Ct. 201, 37 L. Ed. 109; Furrer v. Ferris, 145 U. S. 132, 12 Sup. Ct. 821, 36 L. Ed. 649.

It is true that it is said that no good reason existed for supposing that Mr. Pollock knew of this insolvency. It is to be remarked, however, that in getting security Pollock obtained and accepted a mortgage of the entire assets of the firm. It was said at bar that the words, "all my crop, buggies, wagons, and household goods," were printed in the mortgage, and that under the act of the Legislature above quoted no chattel mortgage can convey any valid interest in property unless such property mortgaged shall be described in writing or typewriting and not printing. This is true. But this property was included by the mortgagor, accepted by the mortgagee, with knowledge of and in spite of the act. It is no unfair inference to draw that both of them supposed that the circumstances surrounding them required the largest concession in the way of security. Beside this, Mr. Pollock must have known, and the record seems to show that he did know, that Jones & Duff had other creditors. Yet, by taking this mortgage, covering and controlling their entire stock of goods of every description in their possession, present and future, he practically made the firm at that instant insolvent to the extent, at least, of appropriating all the assets of the firm to the payment of one favored creditor, and if these be required to pay him in full, leaving nothing for other creditors. Be this as it may, is this mortgage given by an insolvent to one not knowing the insolvency void under the bankrupt law? It goes without saying that it was a preference, and that it was intended as a preference. Under section 60a, a person shall be deemed to have given a preference if, being insolvent, he has made a transfer of any of his property, and if the effect of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class. "Transfer includes the sale and every other and different mode of disposing of or parting with property, or the possession of property, absolutely or conditionally, as a payment, pledge, mortgage, gift, or security." Act 1898, c. 1, subd. 25 (Act July 1, 1898, c. 541, 30 Stat. 544, § 1 [U. S. Comp. St. 1901, p. 3430]). A chattel mortgage transfers property and affords the most efficient mode of obtaining and reducing it into possession. Section 67e provides "that all conveyances, transfers, assignments or incumbrances of his property, or any part thereof, made or given by a person adjudged a bankrupt under the provisions of this act subsequent to the passage of this act and within four months prior to the filing of the petition, with the intent and purpose on his part to hinder, delay, or defraud his creditors, or any of them, shall be null and void as against the creditors of such debtor."

In this case, without the knowledge or authority of his partner, carefully concealing the fact from his partner, and never, although having

full opportunity afterwards, disclosing it, Duff executed a mortgage of all the property of the firm, and of its future stock, to Pollock for this debt. He could devise no better mode of hindering, delaying, and defrauding his creditors, nor could he better disclose intent to prefer Pollock to their disadvantage. Counsel for appellant lay great stress upon the finding of the court below that there is no good reason to believe that Mr. Pollock was aware of the insolvency of the firm when he took the mortgage. He argues that Pollock thus comes within the provisions of section 60b, in which it would appear that the party obtaining a preference must have reasonable cause to believe that it was thereby intended. For this position he relies upon Pirie v. Chicago, etc., Co., 182 U. S. 438, 21 Sup. Ct. 906, 45 L. Ed. 1171. This case simply decides that when a creditor, in the course of business, receives payments on account from his debtor, not knowing that they were intended as a preference, he cannot prove for the remainder of his claim without surrendering the payments he has received. If he does not prove his claim, he may retain that which he has received innocently. Preferences are abhorrent to the bankrupt law, and contrary to its entire spirit and purposes. Yet if a creditor, in the course of business, receives payments in money, not knowing that they, in fact, constituted a preference, he may retain them, provided that he seek nothing further from the bankrupt's estate In other words, he retains his preference at the cost of the rest of his claim. If he seeks further aid from the bankrupt's estate, he must surrender his preference.

It would seem that there is a great difference in the attitude of a creditor who has actually received in possession, without knowledge of a preference, money or property of his debtor who is afterwards adjudicated a bankrupt, and that of a creditor who has received such a preference which only can be secured to him upon application to the court of bankruptcy, and who applies to that court to put him in possession. In the first case he may retain what he has received, losing all claim for any balance of his debt; in the latter case he can get no relief without surrendering his preference. In the Pirie Case it was found as a matter of fact that when the payments were made Pirie did not have reasonable cause to believe that the bankrupt, by said payments, intended thereby to give a preference Nor did the bankrupt, by such payments, intend thereby to give a preference. In the case at bar, when Pollock received this chattel mortgage covering all the property of the mortgagee, and when Duff gave the mortgage practically clothing Pollock with a legal title to all the property of the firm, it is impossible to say that the one did not know that he got a preference and that the other was unaware that he gave a preference. The appellant also relies upon the case of McIntyre v. McNair (C. C. A.) 113 Fed. 113, as applicable to this case. The facts found in that case were that when the mortgage of Sanderlin, who afterwards became a bankrupt, was executed it was intended in good faith, neither Sanderlin nor his mortgagee having any knowledge that he was insolvent. Nor is there anything in the record showing that Sanderlin was then insolvent. Section 67d. Concluding the discussion of this branch of the case, the language of the Circuit Court of Appeals by

Sanborn, Circuit Judge, in Swarts v. Fourth Nat. Bank, 117 Fed. 1, 54 C. C. A. 389, is not without force:

"The two dominant purposes of the framers of that act were: (1) The protection and discharge of the bankrupt; and (2) the distribution of the unexempt property which the bankrupt owned four months before the filing of the petition in bankruptcy against him, share and share alike, among his creditors. All the earlier sections of the act are devoted to the security and relief of the bankrupt, and when the distribution of his property is reached the provisions relating to it are all drawn from the standpoint of the insolvent, and not from that of his creditors. The rights and privileges of the bankrupt, and the equal distribution of his property, dominate every provision, while the rights, wrongs, benefits, and injuries of his creditors are always incidental and secondary to these controlling purposes. Section 60a contains the legal and controlling definition of the preference specified in section 57g and the other parts of the bankrupt act. But this definition of a preference was not written from the station of the creditor, but from that of the debtor. It is not the act of the creditor, but the act of the debtor, which gives it—which produces it. The controlling thought is not the benefit or injury to the creditor, but the equal distribution of the property of the bankrupt among the holders of the provable claims against him."

There is yet another point of view from which we can test the validity of this claim. The bankrupt when insolvent gave to A. H. Pollock a mortgage of his entire stock in trade and other property to secure this debt of $2,000. In South Carolina it is declared that assignments by an insolvent debtor, giving priority or preference, are null and void. Civ. Code S. C., § 2647. Construing this act, the Supreme Court of the state has held that an instrument, although in form of a mortgage, if it disposes of the whole of the grantor's estate for the purpose of securing a creditor, is in fact an assignment for creditors, to be construed and controlled as such. Stewart v. Kerrison, 3 S. C. 266. In Wilks v. Walker, 22 S. C. 180, 53 Am. Rep. 706, the debtor gave a chattel mortgage to his grantor covering nearly all of his property to secure his debt. It was held that this was an assignment for the benefit of creditors under the statute on that subject, and void under that statute. In Austin v. Morris, 23 S. C. 393, a merchant gave certain of his creditors a chattel mortgage of all his stock in trade to secure certain notes, with the usual power of sale. It was held that this was, in contemplation of law, an assignment for the benefit of creditors and void. In Wilks v. Walker, supra, the court says:

"The manifest object of the act is to prevent an insolvent debtor from transferring or assigning his property for the benefit of one or more of his creditors to the exclusion of all others, and whether this object is sought to be effected by a formal deed of assignment or in any other mode can make no difference. Any other view, it seems to us, would sacrifice substance to mere form, and enable insolvent debtors, by evasion, to effect a purpose declared by statute to be unlawful."

We are of the opinion that, both under the statute law of South Carolina and the provisions of the bankrupt law, A. H. Pollock cannot claim under this mortgage against the estate of the bankrupt.

The decree of the court below is affirmed.