## In re MILLER.

### (District Court, N. D. Ohio, E. D. January 28, 1915.)

### (Nos. 3413–3415, 3567.)

BANKRUPTCY ⊂⇒165—PREFERENCES—TRANSFERS CONSTITUTING.

A debtor, who was hopelessly insolvent and owed more than $4,000, sold a stock of goods, his principal asset, for $1,500, and from the proceeds paid the claims of three creditors, aggregating about $900, which were in the hands of attorneys for collection, paid such attorneys and other attorneys $200 to retain them as counsel in possible proceedings growing out of the transaction, and claimed the balance for his exemptions. The attorneys in question had had the claim of one of the creditors for some weeks, and had taken a cognovit note, signed by the debtor's wife as surety, and secured by the assignment of book accounts. Shortly before the sale a representative of another of such creditors visited the debtor with regard to protested checks, and the debtor at that time, to the attorney's knowledge, made a statement of his financial condition showing that he was solvent, valuing the stock of goods at $3,000, and stating his debts at about one-fourth of the real amount. Shortly before the sale the attorneys notified their clients of the imminence of such sale and received the claims in question for collection. *Held* that, as the evidence indicated that the transaction was on the part of the bankrupt in conscious fraud of his creditors, the creditors in question received voidable preferences under Bankr. Act July 1, 1898, c. 541, §§ 60a, 60b, 30 Stat. 562, providing that a transfer by a bankrupt while insolvent and within four months before the filing of the petition, which will enable one creditor to obtain a greater percentage of his debt than other creditors of the same class, constitutes a preference, and that if a bankrupt shall have made a transfer while insolvent which operates as a preference, and if the person receiving it shall have reasonable cause to believe that its enforcement will effect a preference, it shall be voidable, since the circumstances known to the creditors and their attorneys were sufficient to put an ordinarily prudent man on inquiry, and a real inquiry, such as a reasonably prudent and honest man would have made under the circumstances, would have disclosed the hopeless insolvency of the bankrupt, and that they would be unlawfully preferred if their debts were paid in full.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 259, 260, 266; Dec. Dig. ⊂⇒165.]

In Bankruptcy. In the matter of F. H. Miller, bankrupt. On exceptions of Jesse E. La Dow, trustee, to the findings of a special master respecting alleged preferences to the Tracy & Avery Company, the William Edwards Company, and the A. F. Remy Company. Exceptions allowed.

Jesse E. La Dow, of Mansfield, Ohio, in pro. per.
Mabee & Anderson, of Shelby, Ohio, for defendants.

KILLITS, District Judge. These cases are submitted together and upon the same state of facts. The trustee of F. H. Miller, bankrupt, excepts to the findings of a special master who reported against the trustee's petition to recover a preference, respectively, from the defendants named in the title hereto.

We are of the opinion that a mere statement of the facts will indicate what the court should do with the exceptions. January 4,

1910, the bankrupt owed to more than 70 creditors more than $4,000, and was hopelessly insolvent, and had been insolvent for a considerable time.

Messrs. Mabee & Anderson, attorneys at law, were, and for some time theretofore had been, attorneys for each of the defendants, to look after their respective interests in mercantile accounts. The claim, in the sum of $373.12, of one of the defendants, the Tracy & Avery Company, had been in Mabee & Anderson's hands for collection for some weeks, and, in December, 1909, a cognovit note was taken in payment of it; the note being signed by bankrupt's wife as surety, and further secured by the assignment of book accounts.

About two weeks before January 4, 1910, a traveling representative of another defendant, the Albert F. Remy Company, called upon bankrupt for the purpose of looking into his financial condition. The visit was occasioned by the fact that bankrupt had allowed checks for $56.94 and $73.78, issued November 8 and 22, respectively, to go to protest. At that time bankrupt made a sworn statement of his financial condition, showing a net worth of $3,400. The debts were stated to be in a sum about one-fourth the real amount. The principal asset was a stock of goods, which the statement valued at $3,000. Mabee & Anderson knew of this statement. Following receipt of this statement, the Remy Company allowed bankrupt additional credit in amount of $91.93.

A day or two before January 4 Mabee & Anderson notified their clients of the imminence of a sale of Miller's store, having learned of the fact from the parties, and received the three claims in question for collection.

During the forenoon of January 4, in the office of Mabee & Anderson, the bankrupt sold his store to other parties for $1,500 in cash. Immediately the claims in Mabee & Anderson's hands, $373.12 to the Tracy & Avery Company, $259.67 to the William Edwards Company, and $274.35 to the A. F. Remy Company, were paid, and the balance was kept by bankrupt. In a day or two thereafter bankrupt retained Mabee & Anderson and another law firm as his counsel in possible proceedings growing out of the sale transaction, paying each firm a retaining fee of $100. None of the balance of the sale proceeds ever came to the trustee in bankruptcy. The bankrupt claims that he retained that balance—less than $400—for his exemptions.

The evidence leaves the court in little doubt but that the transaction was, on the part of the bankrupt, in conscious fraud of his creditors. That it operated as a great fraud on other creditors, as well as a preference for the three who got paid their accounts in full, there is likewise no doubt.

Was there here in each case a voidable preference under sections 60a and 60b of the Bankruptcy Act? We have no hesitation in answering this question affirmatively. The law cannot be balked in this way in its efforts to treat equally all creditors of the same class.

Each defendant is not only chargeable with knowledge it directly had on this occasion respecting the condition of the bankrupt; but, as it became the beneficiary of the conduct of its agents, Mabee &

Anderson, in addition it is to be considered as having the knowledge possessed by that firm.

The law is well settled, when the circumstances are of such a character as to put an ordinarily prudent man on inquiry, the beneficiary of such a one-sided transaction as this is held to the duty of making a real inquiry to ascertain if the facts justify the favor to him, and, making no real inquiry, he is charged with just such knowledge as an inquiry of the character indicated would have produced, had it been truthfully answered. What the court means by the term a "real inquiry" is that investigation which a reasonably prudent and honest man would make after the circumstances known to him suggested that an inquiry ought to be made.

The facts known to defendants and their counsel before their claims were paid unquestionably put defendants each on inquiry. It is beyond question that a "real inquiry," entered into by business men owning claims against bankrupt, would very soon have disclosed the hopeless insolvency of bankrupt, and that to pay any defendant in full would be to unlawfully prefer it.

It follows that the special master is wrong in his conclusions, and that, as to each defendant, the exceptions of the trustee should be allowed.