The plaintiff is trustee of the estate of Isabella Flatters, bankrupt. He brings this suit to set aside a conveyance, made within four months prior to the filing of the petition, on the ground that it constitutes a preference within the bankruptcy act.
On August 23, 1923, the bankrupt was record owner of eighty acres of land in Ransom county; on that date, she conveyed this property to her son, defendant in this action, who recorded the instrument on *Page 461 
August 25, 1923. On December 17, 1923, Isabella Flatters was adjudicated a bankrupt in the district court of the United States, for the district of North Dakota. The deed, on its face, purports to be executed for a consideration of $1,500, and the assumption of a mortgage against the property of $500. The bankrupt is a married woman living with her husband near Grace City, this state; the defendant Flatters is a married man living with his family in the vicinity of Grace City. In her petition in the bankruptcy court, Isabella Flatters listed one creditor, the indebtedeness to it being about $1,100, evidenced by a promissory note, dated March 29, 1922. The schedule disclosed no property except $57.50, the avails of a life insurance policy, exempt under the laws of the United States.
Judgment was entered in favor of the trustee. The court found, and appellant concedes the proof shows, that the grantor was insolvent at the time of the transfer; that the transfer was made within four months of the filing of the petition in bankruptcy; that the bankrupt made the transfer in question; and that the creditor to whom the transfer was made, will be entitled to and will in fact, receive a greater percentage of his debt than other creditors of the same class. The trial court also found that the defendant, transferee, had reasonable cause to believe that the enforcement of the transfer would effect a preference. This finding is the only one challenged by the appellant. The trial court specifically found that the defendant knew the financial condition of his grantor and had reasonable ground to believe that a preference would result from the transaction; and that all the allegations of the complaint are true. The defendant specifies as error the finding by the trial court that the plaintiff had reasonable cause to believe that the enforcement of the transfer would effect a preference; and in holding that the transfer in question should be set aside. The appellant says that the only question is "Did Isaac Andrew Flatters on August 23, 1923, know or have reasonable cause to believe that enforcement of the transfer would effect a preference?"
It will be perceived that the sole question is one of fact. The record tends to show the following facts. The defendant claims that there was a consideration of $1,500 for the transfer. It was a past consideration. The facts relating to the consideration are as follows: In 1917 the defendant and his brother John, had homesteads in Montana and *Page 462 
entered into a partnership arrangement for the purpose of farming the land. It became necessary for them to borrow $1,500. John agreed to obtain the loan on the security of his homestead, and it was understood that he would put the money into the partnership business. Before the loan was completed, John was drafted and later died in the service of the United States government. The defendant claims that his brother John owed him $1,500 as a result of the partnership transaction. There is no writing of any sort in the record tending to substantiate his claim. Although defendant served as administrator of his brother's estate, he made no claim on account of the alleged debt. Under the Montana law of succession, John's property descended to his parents, Dan Flatters and Isabella Flatters. Dan and Isabella jointly purchased a farm near Grace City, and, in 1920, purchased some lumber from one Goddard, to build a building thereon. Goddard sued Dan and Isabella Flatters, and in 1921, in the state of Montana, they gave him a quit claim deed of the Montana land. This conveyance was made, notwithstanding the claim of the defendant that his parents had promised to deed him the Montana land in payment of the indebtedness owing by his deceased brother. It is the claim of the defendant that the land in Ransom county, described in the conveyance which is here challenged, was transferred to him because the Montana land had been conveyed to Goddard. The defendant moved from Montana to Grace City in 1919 and ever since has lived within a few miles of the farm on which his parents lived. The evidence tends to show that he visited them frequently and assisted them somewhat in their farming operations. It appears that the defendant knew that his father was distressed financially, but he denies knowledge of any pecuniary embarrassments in which his mother might have been involved. It appears that in the fall of 1923 Dan and Isabella Flatters lost the farm near Grace City. The defendant admits that he knew that his mother had no property except the land in Ransom county and that the transfer to him rendered her propertyless. He admits, notwithstanding this knowledge, that he made no inquiries at the time of the transfer respecting any indebtedness which she might owe. He admits that he knew at the time, that his mother had been sued not long before, in the courts of Montana upon an indebtedness arising *Page 463 
out of some building operations on the home farm and that she was unable to resist this lawsuit.
Section 60a of the Bankruptcy Act, being § 9644, U.S. Comp. Stat. 1 Fed. Stat. Anno. 2d ed. p. 1004, defines preferences as follows:
"A person shall be deemed to have given a preference if, being insolvent, he has, within four months before the filing of the petition, or after the filing of the petition and before the adjudication, procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class. Where the preference consists in a transfer, such period of four months shall not expire until four months after the date of the recording or registering of the transfer, if by law such recording or registering is required."
It is the effect of the transfer, not the intent of the debtor which controls. It is conceded that the grantor was insolvent at the time of the conveyance. The sole question is whether the transfer in the circumstances constitutes a voidable preference under the bankruptcy act. In Black on Bankruptcy, 4th ed. ¶ 1032, with reference to the import of the phrase, "reasonable cause to believe," it is said: "But it is important to notice that the statute does not require that the preferred creditor should have any actual knowledge on the subject of the debtor's insolvency or the result of the transaction in giving a preference, nor even that he should have any actual belief on the point. What he really thinks or believes is entirely immaterial. What the law requires is `reasonable cause to believe' and if this exists, it is enough without regard to the actual state of the creditor's mind or opinion." Again, continuing the same subject in § 1034, it is said:
"Where a creditor, about to receive a payment or security from his debtor, has knowledge or notice of facts which would incite a man of ordinary prudence and business intelligence to inquire as to the debtor's solvency and the probable effect of the transaction as a preference, he is bound to prosecute a reasonably diligent inquiry to ascertain the truth; and if he fails to do so, he is chargeable with knowledge of the facts which such an inquiry would have disclosed; and if such ultimate knowledge would give him reasonable cause to believe that the *Page 464 
transaction would result in giving him a preference, within the meaning of the bankruptcy law, then he cannot safely accept the payment, transfer, or security, for if the debtor's bankruptcy follows within four months, the transaction will be voidable at the suit of the trustee."
It would seem to be essential ordinarily that the creditor have "reasonable cause to believe" that the debtor was insolvent at the time of the transfer. Black on Bankruptcy, 4th ed. § 1032, page 1311. It is conceded that the grantor was in fact insolvent; but it is denied that the defendant had "reasonable cause" to believe that such was the fact. While he asserts he did not know that she owed any debts, defendant admits that he knew the conveyance to him by his mother devested her of all her property. The undisputed testimony is that the defendant knew that his father was financially embarrassed — "in bad shape;" that the mother had no funds with which to resist a lawsuit in Montana; that the grantee was at home with his parents part of the time and helped them on the farm; and that a short time after the transfer in question, the parents gave up the land which they had purchased from Mrs. Anderson. Did not the circumstances suggest to a man of ordinary prudence and intelligence the probability that the grantor might be involved with her husband whom the grantee knew to be in "bad shape" financially? We think so. Surely, by getting all her property he had "reasonable cause to believe" that a preference would be effected if there were a single creditor besides himself. He knew that he was being preferred in fact and in law if she was indebted to any extent; and he actually knew that the enforcement of the transfer would effect a preference, if the grantor owed a single debt. See McElvain v. Hardesty, 94 C.C.A. 399, 169 Fed. 36, and Pollock v. Jones, 61 C.C.A. 555, 124 Fed. 163. A single question respecting the existence of outstanding indebtedness would have disclosed that he would receive a greater proportion of his debt than any other creditor of the same class. He refrained from making inquiry when the circumstances and every consideration of prudence suggested that inquiry should be made. Notwithstanding he knew that his father was in "bad shape" financially and crops had been poor, he did not ask his mother, the grantor, whether she was obligated on any of the father's debts, although as a man of some business experience he might have known that in all probability such might be the fact. *Page 465 
Defendant knew that his mother was in some way involved in the deal which culminated in the loss of the Montana land; yet he did not inquire if she was involved in any other obligations which her husband owed. The true test is what inference would the ordinarily intelligent or prudent business man draw from the facts. Dutcher v. Wright, 94 U.S. 553, 24 L. ed. 130; Grant v. First Nat. Bank, 97 U.S. 80, 24 L. ed. 971; 7 C.J. 164. In Coder v. McPherson, 82 C.C.A. 99, 152 Fed. 951, 18 Am. Bankr. Rep. 523, it is said: "Notice of facts which would incite a man of ordinary prudence to an inquiry, under similar circumstances is notice of all the facts which a reasonably diligent inquiry would disclose."
Applying the principles of law stated heretofore, we are satisfied that the conclusion of the trial court to the effect that the defendant had, at the time of the transfer, reasonable cause to believe that the enforcement of the conveyance would effect a preference, must be sustained. The defendant knew that his father was financially embarrassed and that his mother had been involved in some of the father's pecuniary difficulties; he knew that his mother had been unable to contest a law suit in Montana, and lost her land there through financial troubles; and that he was receiving all her property. We think he was in possession of facts which gave him reasonable cause to believe that the transfer would effect a preference. The means of knowledge were at hand; the facts and circumstances, to which reference has been made, put the defendant on inquiry. His omission to inquire was at his own peril and he is chargeable with knowledge of the facts which proper inquiry would have disclosed.
The judgment is affirmed.
CHRISTIANSON, Ch. J., and BURKE, BIRDZELL, and NUESSLE, JJ., concur. *Page 466