**BURK v. MUSK et al.**

District Court, E. D. Illinois.
July 28, 1931.

Gunn, Penwell & Lindley, of Danville, Ill., for plaintiff.

Jones, McIntire & Jones, of Danville, Ill., for defendants.

LINDLEY, District Judge.

The trustee in bankruptcy of John Musk seeks to recover certain property, consisting of all the estate, real and personal, of the bankrupt, conveyed by him to his brothers May 6, 1930, in consideration of the satisfaction of his indebtedness to them and payments in cash by them to him aggregating $1,485.

From the findings of fact, it appears that John was on May 6, 1930, known by Perry Musk, agent for all defendants, to have insufficient property to pay even the debts due his brothers; that he conveyed all his assets to defendants; that they knew of no other creditors and made no inquiry concerning same.

Under section 60, Bankr. Act (11 USCA § 96), a bankrupt is deemed to have given a preference if within four months preceding his bankruptcy, while insolvent, he has made a payment or transfer of property to a creditor, and the effect thereof will be to enable the transferee or payee to receive a greater percentage of his claim than other creditors of the same class. Such preference is voidable at the suit of the trustee, under section 60b (11 USCA § 96(b), provided the transferee had reasonable cause to believe that a preference would be effected as a result of the transaction.

In the present case, all the elements of a voidable preference appear, unless it be

proof of reasonable cause upon the part of the transferees to believe that a preference would result. The issue is limited to that narrow question of fact.

The bankrupt had other debts of substantial amount of some years' standing. He had borrowed money at three different banks. He had no visible means of support, no settled vocation, and no known source of income. He had been a tenant farmer and a man of casual employment. He had borrowed money in substantial amounts from the transferees and had repaid no part of the principal and only a small portion of the accrued interest thereon. His indebtedness had over a period of years, without reduction, constantly grown, until the brothers demanded payment in full. He replied that he could pay them only by transferring to them his assets. They agreed to take and received a conveyance of all the same, including real estate, grain, choses in action, money in bank, and amount due for labor. The conveyances stripped him of all tangible property and left him without means or vocation, except $1,485 advanced to him in cash. At the time of the recording of the conveyances, according to the testimony of defendants, the assets conveyed were worth little more than one-half of his debt to his brothers, but the transaction was completed upon the basis of the parol agreement made some months before when the property transferred was agreed as being worth $1,485 more than the indebtedness.

Of all these facts, the transferees had notice, unless it be of other creditors. At the time of the recording, they knew him to be insolvent, but they insist they knew of no other creditors, and therefore could not have reasonable ground to believe that they were obtaining a preference. They made no inquiry as to other debts, but rely upon their lack of knowledge as their defense.

A transfer of all assets of an insolvent person to one creditor is not an ordinary or normal transaction. It is so unusual that the courts quite generally hold it puts the transferee upon inquiry and charges him with such knowledge as a reasonably prudent man would acquire upon such inquiry.

Thus in McElvain v. Hardesty, 169 F. 31, 36 (C. C. A. 8) the court said: "Moreover, if McElvain did not have actual knowledge of the insolvent condition of his debtors, we think in the circumstances of this case he is constructively chargeable with that knowledge. He took a transfer of all his debtors' property—of a going concern—in satisfaction of a debt. This in itself was an unusual

thing, and the reasons which actuated it must have sprung from a fear or suspicion of danger. Solvent and prosperous business houses do not commonly pay debts that way. He knew of his own dishonored notes. He knew that his debtors could not have carried on active business for seven months and thereby make enough to pay over $2,600 upon his own indebtedness assumed by them without purchasing supplies. These facts and many others disclosed by the record were sufficient to put him as an ordinarily prudent man upon inquiry as to his debtor's solvency and to charge him with all the knowledge he could have acquired by the exercise of reasonable diligence."

In re Miller (D. C.) 221 F. 471, 473, the court announced: "When the circumstances are of such a character as to put an ordinarily prudent man on inquiry, the beneficiary of such a one-sided transaction as this is held to the duty of making a real inquiry to ascertain if the facts justify the favor to him, and, making no real inquiry, he is charged with just such knowledge as an inquiry of the character indicated would have produced, had it been truthfully answered. What the court means by the term a 'real inquiry' is that investigation which a reasonably prudent and honest man would make after the circumstances known to him suggested that an inquiry ought to be made.

The facts known to defendants and their counsel before their claims were paid unquestionably put defendants upon inquiry. It is beyond question that a 'real inquiry,' entered into by business men owning claims against bankrupt, would very soon have disclosed the hopeless insolvency of bankrupt, and that to pay any defendant in full would be to unlawfully prefer it."

In Bentley v. Young et al., 223 F. 536 (C. C. A. 2) the court remarked: "The offer of Kruger's entire stock at a lump sum was a circumstance to put Henry Young upon inquiry."

The Supreme Court defines the test as follows: "When the condition of a debtor's affairs are known to be such that prudent business men would conclude that he could not meet his obligations as they matured in the ordinary course of business, there is reasonable cause to believe him to be insolvent. Knowledge is not necessary, nor, even a belief, but simply reasonable cause to believe." Merchants' National Bank v. Cook, 95 U. S. 346, 24 L. Ed. 412. "The transfer, in any case, by a debtor, of a large portion of his property, while he is insolvent, to one credi-

tor, without making provision for an equal distribution of its proceeds to all his creditors, necessarily operates as a preference to him, and must be taken as conclusive evidence that a preference was intended, unless the debtor can show that he was at the time ignorant of his insolvency, and that his affairs were such that he could reasonably expect to pay all his debts. The burden of proof is upon him in such case, and not upon the assignee or contestant in bankruptcy." Toof v. Martin, 13 Wall. 48, 20 L. Ed. 481.

Though the two cases last cited arose under the former act, the test of what constitutes reasonable cause to believe remains the same. So when the bankrupt conveyed his entire estate, the court, in the case of In re McDonald & Sons (D. C.) 178 F. 487, 492, said: "The unusual nature of the transaction, in connection with all the circumstances, raises such a presumption that it can only be overcome by proof on the part of the preferred creditor that he took the proper steps to find out the pecuniary condition of the debtor."

In Pollock v. Jones, 124 F. 163, 168 (C. C. A. 4) the court went so far as to say: "When Pollock received this chattel mortgage covering all the property of the mortgagee, and when Duff gave the mortgage practically clothing Pollock with a legal title to all the property of the firm, it is impossible to say that the one did not know that he got a preference and that the other was unaware that he gave a preference."

A cause very similar to that at bar is Jones v. Flatters, 54 N. D. 459, 209 N. W. 969, 971, 8 A. B. R. (N. S.) 669; where a son, creditor of his mother, residing some distance from her and said to be unfamiliar with her financial affairs, accepted a conveyance of all her property in satisfaction of his debt. There the court said: "It is conceded that the grantor was in fact insolvent; but it is denied that the defendant had 'reasonable cause' to believe that such was the fact. While he asserts he did not know that she owed any debts, defendant admits that he knew the conveyance to him by his mother devested her of all her property. * * * Surely, by getting all her property he had 'reasonable cause to believe' that a preference would be effected if there were a single creditor besides himself. He knew that he was being preferred in fact and in law if she was indebted to any extent; and he actually knew that the enforcement of the transfer would effect a preference, if the grantor owed a single debt. * * * A single question

respecting the existence of outstanding indebtedness would have disclosed that he would receive a greater proportion of his debt than any other creditor of the same class. He refrained from making inquiry when the circumstances and every consideration of prudence suggested that inquiry should be made." The conveyance was held voidable.

Black on Bankruptcy (4th Ed.) § 1034 states the general rule as follows: "Where a creditor, about to receive a payment or security from his debtor, has knowledge or notice of facts which would incite a man of ordinary prudence and business intelligence to inquire as to the debtor's solvency and the probable effect of the transaction as a preference, he is bound to prosecute a reasonably diligent inquiry to ascertain the truth; and if he fails to do so, he is chargeable with knowledge of the facts which such an inquiry would have disclosed; and if such ultimate knowledge would give him reasonable cause to believe that the transaction would result in giving him a preference, within the meaning of the bankruptcy law, then he cannot safely accept the payment, transfer, or security, for if the debtor's bankruptcy follows within four months, the transaction will be voidable at the suit of the trustee."

See, also, Martin v. McDonald, etc., Co., 159 Minn. 447, 199 N. W. 176, 4 A. B. R. (N. S.) 553.

Though the question is a close one, I am of the opinion that the proof is such that Perry Musk, acting for himself and his brothers in the transaction, had reasonable ground to believe that the effect of the conveyances would effect a preference. On May 6, he knew the assets were insufficient to meet the debt due him and his brothers. He knew they were receiving all of John's assets. The unusual character of the transaction put him upon inquiry. A simple question propounded to the nearest banks would have disclosed other indebtedness. As a reasonably prudent man he was charged with such knowledge as he would thus have obtained.

If we consider John Musk as a man of any vocation, the conveyance of all his personal property must be held void also because not in compliance with the Bulk Sales Law of Illinois. Main v. Hall, 41 F.(2d) 715 (C. C. A. 7).

Inasmuch as defendants advanced $1,485 to John in addition to canceling his indebtedness, they must be given credit for that amount. There will be a decree, therefore, directing defendants to pay to the trustee

the value of the property as found in the findings of fact on May 6, 1930, less $1,485, within 30 days, and, in case of failure so to pay, directing them to reconvey to the trustee the property less the aforesaid credit.