## MUSK et al. v. BURK.

### No. 4665.

Circuit Court of Appeals, Seventh Circuit.

April 23, 1932.

V. W. McIntire, of Danville, Ill., for appellants.

Walter T. Gunn, of Danville, Ill., and J. H. Dyer, of Hoopeston, Ill., for appellee.

Before ALSCHULER and SPARKS, Circuit Judges, and WHAM, District Judge.

WHAM, District Judge.

This is an appeal from the decree of the District Court in favor of appellee under his bill to set aside as a voidable preference a deed to certain real estate and a bill of sale of certain personal property made by the bankrupt to appellants within four months of the filing of the involuntary petition in bankruptcy.

John E. Musk was adjudged bankrupt on August 20, 1930, on an involuntary petition filed July 26, 1930. He was one of the six sons of James Musk, who in 1918 conveyed to all of his sons as tenants in common two farms located near, and two pieces of real estate located in, Hoopeston, Ill., retaining a life interest therein. The father died in 1925. Perry Musk became the agent of all the brothers in the management of the estate. In 1926 the brothers mortgaged one of the farms to the Ætna Life Insurance Company to secure a loan of $15,000, which was mainly used to pay

debts of the estate and improve the property, but $4,000 of which was advanced to the bankrupt and $1,800 to another brother. The bankrupt did not prosper. In 1926 he worked with Perry on the farm. At different times he was proprietor of a restaurant, a tenant farmer, and a traveling medicine salesman. At the time of the transaction in question he was, not only without employment or occupation, but his indebtedness to his brothers had grown to $8,679.80 and he was in need of funds. In September, 1929, Perry asked for payment of said indebtedness, and the bankrupt said he could pay only by selling his interest in the estate. Perry consulted the other brothers, and later, acting for himself and them, verbally agreed with the bankrupt to buy his entire interest in the estate for $9,907. On May 6, 1930, the settlement was consummated, and the bankrupt conveyed to his brothers by deed, dated January 14, 1930, his interest in the real estate, and, by bill of sale, his personal property. Both instruments were recorded on that date. The brothers paid the agreed consideration by canceling the bankrupt's indebtedness to them and paying him $1,485 in cash. Between September, 1929, and May, 1930, the value of the property conveyed had decreased, and at the time of the transaction its value was but $5,099.06, or $3,580.74 less than the bankrupt's indebtedness to his brothers. He had no other property, and the brothers knew it.

In the face of the foregoing facts, no inquiry was made by any of the brothers as to whether the bankrupt had other debts. Perry, knowing that he, as security, had signed bankrupt's note to one Cadle for $875, inquired of bankrupt concerning that indebtedness, and without further investigation accepted bankrupt's statement that the note had been paid, which after the transfer in controversy proved to be false. The bankrupt was not asked whether he had other debts. The facts were that, in addition to the Cadle note and the indebtedness to the appellants, the bankrupt owed $2,405 to two banks in Rossville, in and near which village he had been living for twenty years, $300 to a bank in Hoopeston, seven miles distant from Rossville, and a number of small obligations in and about Rossville.

The District Court made and filed special findings of fact in substantial accord with the facts above stated, and further found that "the circumstances were such on May 6, 1930, that the defendants through their agent had reasonable cause to believe the bankrupt insolvent and that the transaction would effect a voidable preference to them." On these findings the decree was that the defendants "pay to the complainant, Lee W. Burk, Trustee in Bankruptcy of John E. Musk, bankrupt, the sum of $5,614.06 within thirty days from the date of this decree; and in case of their failure to so pay the complainant said sum of money * * * reconvey to the trustee the property above mentioned subject to the payment to defendants of said sum of $1,485 which shall be paid to them out of the sale price thereof by said trustee." It appears that the sum the appellants were ordered to pay to the trustee was the difference between the value of property conveyed on May 6, 1930, as found by court, namely, $5,099.06, and the cash payment of $1,485 made to the bankrupt; also that the rights of the appellants growing out of their payment of $1,485 to the bankrupt are protected.

The questioned transfers were made within four months of the filing of the petition in bankruptcy. The transferor was insolvent and the transfers effected a preference. Under these facts section 60b of the Bankruptcy Act, 11 USCA § 96 (b) made the transfers voidable if, when made, "the person receiving it or to be benefited thereby, or his agent acting therein, shall then have reasonable cause to believe that the enforcement of such * * * transfer would effect a preference."

Appellants urge that they did not know and had no reason to believe that there were other debts than theirs, and, though they knew he was conveying all his property to them, it was an undivided interest in an estate for which, in addition to the cancellation of all his debts to them, they were paying him $1,485 in cash; that under those circumstances they had no cause to believe he was insolvent or that the transfer would effect a preference.

They knew that his financial circumstances for years had been steadily growing worse, that his indebtedness to them had been increasing, that he had in years past engaged in different businesses, that he had had opportunity and incentive to borrow from others without their knowledge, that they were getting all his property, and that its value was less than the amount of his indebtedness to them. These facts were sufficient to put a reasonably prudent person on inquiry both as to his solvency and as to whether there were other debts, and the appellants here were under duty to make such inquiry. McElvain v. Hardesty, 169 F. 31 (C. C. A.

8); Bentley v. Young et al., 223 F. 536 (C. C. A. 2); Merchants' National Bank v. Cook, 95 U. S. 342, 24 L. Ed. 412; Toof v. Martin, 13 Wall. 40, 20 L. Ed. 481; In re C. J. McDonald & Sons (D. C.) 178 F. 487; Pollock v. Jones, 124 F. 163 (C. C. A. 4); Jones v. Flatters, 54 N. D. 459, 209 N. W. 969, 971, 8 A. B. R. (N. S.) 669; Martin v. McDonald, etc., Co., 159 Minn. 447, 199 N. W. 176, 4 A. B. R. (N. S.) 553; Black on Bankruptcy (4th Ed.) § 1034; Collier on Bankruptcy (13th Ed.) page 1312.

The fact that the property conveyed was the bankrupt's interest as tenant in common in an estate, and that the creditors to whom it was conveyed were his brothers and co-tenants, should not affect the rule established by the foregoing authorities, since the circumstances were such that it was reasonable to believe that others, knowing of his interest in the estate, had been induced thereby to extend credit to him and to rely upon such interest for payment. Here it had been generally known for several years that the bankrupt had a valuable undivided interest in his father's estate, and reasons were not wanting to cause a prudent person to believe that the bankrupt may have made use of that fact to obtain credit where he could.

The case of Jones v. Flatters, supra, is sufficiently similar to this to merit notice. It dealt with a conveyance by a mother of all of her property to her son in payment of her indebtedness to him. He lived at a distance from her and was not familiar with her business. The court, nevertheless, held the conveyance to be a voidable preference, saying: "While he asserts he did not know that she owed any debts, defendant admits that he knew the conveyance to him by his mother devested her of all her property. * * * Surely, by getting all her property he had 'reasonable cause to believe' that a preference would be effected if there were a single creditor besides himself. He knew that he was being preferred in fact and in law if she was indebted to any extent; and he actually knew that the enforcement of the transfer would effect a preference, if the grantor owed a single debt. * * * A single question respecting the existence of outstanding indebtedness would have disclosed that he would receive a greater proportion of his debt than any other creditor of the same class. He refrained from making inquiry when the circumstances and every consideration of prudence suggested that inquiry should be made."

That a preferential transaction shall be deemed voidable does not require that the person to be benefited should know that the result of the transaction would be to effect a preference, but it will be sufficient if the person preferred, or his agent therein, have knowledge or notice of facts and circumstances that would incite a person of reasonable prudence under similar circumstances to make inquiry, as he is thereby charged with notice of all the facts which a reasonably diligent inquiry would develop. Collier on Bankruptcy (13th Ed.) 1300–1302; Essex National Bank v. Hurley, 16 F.(2d) 427 (C. C. A. 1); Coder v. McPherson, 152 F. 951 (C. C. A. 8).

We believe that the District Court was warranted in its conclusion that a reasonably diligent inquiry here by the appellants or their agent in the community where they knew the bankrupt lived and had lived for twenty years would have disclosed the major portion of his indebtedness to others, and that the transaction would effect a preference.

Under the evidence and the circumstances disclosed by the evidence in the record, the decree of the District Court should be, and is hereby, affirmed.